**Terry M. PARKER, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.01–730–SLR.**

United States District Court, D. Delaware.

Feb. 11, 2003.

William Schab, Esquire of Schab & Barnett, Georgetown, Delaware. Counsel for Plaintiff.

Colm F. Connolly, United States Attorney, and Paulette K. Nash, Assistant United States Attorney, United States Attorney's Office, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff Terry M. Parker filed this action against defendant, the Commissioner of Social Security,[1] on November 7, 2001. (D.I.1) Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a decision by the Commissioner denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–403. Currently before the court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. (D.I.13, 16)

For the reasons that follow, the court shall grant defendant's motion and deny plaintiff's motion.

## II. BACKGROUND

### A. Procedural History

On October 28, 1997, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–443.[2]

Plaintiff's application for disability insurance benefits was denied initially and upon

1. Plaintiff's original complaint named defendant only as "Commissioner of Social Security." Jo Anne B. Barnhart became Commissioner of Social Security, effective November 14, 2001, to succeed Larry G. Massanari. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure [Rule 43(c)(2) of the Federal Rules of Appellate Procedure], Jo Anne B. Barnhart should, therefore, be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2. Plaintiff originally gave a date of alleged disability onset as September 1, 1996. (D.I. 6 at 74) This was amended to an onset date of May 22, 1997. (*Id.* at 96, 117)

reconsideration. (*Id.* at 42–46, 49) Plaintiff requested a hearing before an ALJ and the hearing was held on March 11, 1999. (*Id.* at 55) On March 19, 1999, the ALJ remanded the case to the state agency for further evaluation of plaintiff's mental disorder and a new reconsideration decision. (*Id.* at 66–67) On reconsideration of the state agency reports, plaintiff's claim was denied July 2, 1999. (*Id.* at 68–71) Plaintiff requested another hearing before an ALJ and the hearing was held January 24, 2000. (*Id.* at 272–300) At the hearing, plaintiff was represented by counsel, and plaintiff and a vocational expert testified. (*Id.*) On March 28, 2000, the ALJ issued a decision denying plaintiff's disability benefits application. (*Id.* at 17–29) In consideration of the entire record, the ALJ made the following findings:

1. Claimant met the disability insured status requirements of the Act on May 22, 1997, the date claimant stated that he became unable to work, and has acquired sufficient quarters of coverage to remain insured only through March 31, 1998.

2. Claimant has not engaged in substantial gainful activity since May 22, 1997.

3. The medical evidence establishes that on the date his insured status expired, claimant suffered from degenerative disc disease, status-post lumbar laminectomy and fusion, and depression, impairments which were severe, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's statements concerning his impairments and their impact on his ability to work on the date his impaired status expired are not entirely credible, in light of claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning his ability to work.

5. On March 31, 1998, the date his insured status expired, the claimant retained the residual functional capacity to sit for up to 6 hours and stand and/or walk for up to 2–hours in an 8–hour workday, provided he had the opportunity to alternate sitting and standing every 15 minutes, at his option, lift no more than 10 pounds at a time, occasionally lift or carry 5 pounds, and he had unlimited ability to push and pull with his upper extremities, but was limited in his ability to push and pull with his lower extremities.

6. On the date his insured status expired, claimant's capacity for sedentary work was further diminished by significant non-exertional limitations; which made it impossible for him to climb ladders, ropes, and scaffolds, bend, and stoop, more than occasionally climb stairs and ramps, balance, kneel, crouch, squat, and crawl, work while exposed to moderate vibration or moderate hazards, or perform work precluded by moderate limitations on his ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable

number and length of rest periods, and respond appropriately to changes in the work setting.

7. The reports of treating and examining physicians in the current medical record have been considered under the standards set forth in the Regulations (20 CFR 404.1527, 2 CFR 404.1528, and Social Security Rulings 96–2p and 96–5p), and they are found to be entitled to moderate weight.

8. The residual functional capacity in Finding Nos. 5 and 6, above, differ from the residual functional capacity determination by the State Agency because that determination was reached prior to new evidence being received into the record; so it is only entitled to moderate weight (20 CFR 404.1527; Social Security Rulings 96–5p and 96–6p).

9. On the date his insured status expired, claimant was unable to perform his past relevant work as a security guard, farm worker, laborer, maintenance worker, and landscaper.

10. On the date his insured status expired, claimant was 40 years old, a "younger individual age 18–44."

11. Claimant has a high school education.

12. Claimant has unskilled work experience.

13. Based on an exertional capacity for sedentary work, and claimant's age, educational background, and work experience, Section 404.1569 and Rule 201.27, Table 1, Appendix 2, subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

14. Although claimant was unable to perform the full range of sedentary work on the date his insured status expired, he was capable of making an adjustment to work which existed in significant numbers in the national economy. Such work includes jobs such as: assembly worker, 58,000 of which existed at the national level, and 1,000 at the local level; and grader/sorter, 62,-000 of which existed at the national level, and 1,200 at the local level. A finding of "not disabled" is, therefore, reached within the framework of the above-cited rule.

15. Claimant was not under a disability, as defined in the Social Security Act, at any time through March 31, 1998, the date his insured status expired.

(*Id.* at 27–29)

The decision from the ALJ was appealed to the Appeals Council on April 25, 2000. (*Id.* at 12) In denying the request for review, the Appeals Council found no legal basis to review the ALJ's decision. (*Id.* at 5) Therefore, the ALJ's March 28, 2000 decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210 (2001); *see also Sims v. Apfel,* 530 U.S. 103, 106–07, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Matthews v. Apfel,* 239 F.3d 589, 592 (3rd Cir.2001). Plaintiff now seeks review of this decision pursuant to 42 U.S.C. § 405(g).

**B. Facts Evinced at the Administrative Law Hearing**

Plaintiff was born on February 6, 1958. (D.I. 6 at 276) He was 42 years of age at the time of the administrative hearing on January 24, 2000. He is divorced and has lived with companion Yvonne Garrison for 12 years. (*Id.*) They have resided in a single-story house for the last three years. (*Id.* at 277) Plaintiff received a GED in 1982 and has a driver's license, although

he had not driven in about a year at the time of the hearing. (*Id.* at 277–78) He also has taken a course in Basic Welding. (*Id.* at 279) He served for one year in the military. (*Id.*)

Plaintiff had previously worked in mall security, at a chicken hatchery, in landscaping, and for a contractor. (*Id.* at 281) Plaintiff did not work between 1991 and 1996. (*Id.* at 283)

In 1996, plaintiff went back to work as a mall security guard. (*Id.*) He worked until May 22, 1997, but has not worked since then. (*Id.* at 284)

### C. Vocational Evidence

During the hearing, the ALJ called Dr. James Ryan as a vocational expert. (*Id.* at 294) Dr. Ryan opined as to the exertional and skill requirements of plaintiff's prior jobs and concluded that, based on plaintiff's current specific work restrictions, he could work as an assembly worker or grading and sorting worker. (*Id.* at 294–97)

### D. Medical Evidence

In March 1990, plaintiff suffered a work-related back injury. (*Id.* at 186) He underwent a lumbar discectomy in October 1990 and in June 1992, underwent a second surgery which included fusion at L–4,5. (*Id.*) Plaintiff was seen at Millsboro Family Medical Center on several occasions between March 9, 1995 and September 10, 1996. (*Id.* at 144–64) The record indicates that during this time, plaintiff's medications included Zoloft, Paxil, Relafen, and Darvocet. (*Id.* at 144–64, 254) During this time, plaintiff complained of low back pain of varying severity and appeared to suffer from depression. (*Id.* at 254)

In May 1997, plaintiff was in an automobile accident. (*Id.* at 186) On May 28, 1997, plaintiff consulted his regular physician, Dr. Gorrin, who diagnosed a cervical whiplash injury. (*Id.*) Dr. Gorrin saw plaintiff again on June 19, July 24, and September 16, 1997. (*Id.* at 254–55) Each time, Dr. Gorrin recommended plaintiff be off work for another month. (*Id.*) At the June visit, Dr. Gorrin recommended plaintiff consult a rehabilitation specialist.[3] (*Id.* at 254)

Plaintiff saw Dr. Coveleski of Physical Medicine & Rehabilitation Associates on June 26, July 31, August 26, and September 18, 1997. (*Id.* at 257–61) Dr. Coveleski treated plaintiff with injections of dexamethasone and Depo–Medrol and recommended physical therapy. (*Id.* at 258, 260, 261) Dr. Coveleski noted plaintiff had seen some improvement by the September visit. (*Id.* at 261) Dr. Coveleski did not see plaintiff again until September 3, 1998. (*Id.* at 262)

The record also includes reports from plaintiff's visits to Millsboro Family Health Center on October 9, November 14, and December 23, 1997, and January 23 and April 9, 1998. (*Id.* at 133–39) In connection with the November 1997 visit, the nurse reported that plaintiff stated his neck was better, there were improvements in his back and legs, and that he wanted to go back to work.[4] (*Id.* at 138)

---

**3.** Dr. Gorrin states in his February 4, 2000 letter to plaintiff's attorney that he also saw plaintiff on June 17, July 27, September 11, November 19, and December 21, 1998, January 21, and September 7, 1999, and January 29, 2000. (D.I. 6 at 254–56) Although these dates are after plaintiff's insurance eligibility expired on March 31, 1998, the ALJ consid-ered this evidence in determining that plaintiff was not disabled on the date plaintiff's insured status expired. (D.I. 6 at 17–26)

**4.** While the doctor's handwriting in these records appears to be the same as that in the records of the visits referenced by Dr. Gorrin in his summary to plaintiff's attorney on Feb-

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive," and the court will set aside the Commissioner's denial of plaintiff's claim only if it is "unsupported by substantial evidence." 42 U.S.C. § 405(g) (2002); 5 U.S.C. § 706(2)(E) (1999); *see Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986). As the Supreme Court has held,

"[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Accordingly, it "must do more than create a suspicion of the existence of the fact to be established .... It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660 (1939)).

The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Fed.R.Civ.P. 56:

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g),

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3rd Cir.1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir.1983)). Where, for example, the countervailing evidence consists primarily of the claimant's subjective complaints of disabling pain, the Commissioner "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3rd Cir.1990).

## IV. DISCUSSION

### A. Standards for Determining Disability

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), as amended, "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482

ruary 4, 2000, these visits are not mentioned in that summary. (D.I. 6 at 254–56)

U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2002).

In *Plummer v. Apfel,* 186 F.3d 422 (3rd Cir.1999), the Third Circuit outlined the applicable statutory and regulatory process for determining whether a disability exists:

In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

The Social Security Administration has promulgated regulations incorporating a sequential evaluation process for determining whether a claimant is under a disability. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that her impair-

ments are "severe", she is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to her past relevant work.

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.

*Id.* at 427–28 (internal citations omitted). If the Commissioner finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2002).

■ The determination of whether a claimant can perform other work may be based on the administrative rulemaking tables provided in the Social Security Ad-

ministration Regulations ("the grids"). *Cf. Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 117 (3rd Cir.1995) (noting use of the grids for determination of eligibility for supplemental social security income) (citing *Heckler v. Campbell*, 461 U.S. 458, 468–70, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). In the context of this five-step test, the Commissioner has the burden of demonstrating that the plaintiff is able to perform other available work. *See Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287. In making this determination, the ALJ must determine the individual's residual functional capacity, age, education, and work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c) (2002). The ALJ then applies the grids to determine if an individual is disabled or not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d) (2002).

If the claimant suffers from significant non-exertional limitations, such as pain or psychological difficulties, the ALJ must determine, based on the evidence in the record, whether these non-exertional limitations limit the claimant's ability to work beyond the work capacity obtained from reviewing the Social Security regulation "grids." *See* 20 C.F.R. § 404.1569a(c)-(d). If the claimant's non-exertional limitations are substantial, the ALJ uses the grids as a framework only and ordinarily seeks the assistance of a vocational specialist to determine whether the claimant can work. *See Santise v. Schweiker*, 676 F.2d 925, 935 (3rd Cir.1982); 20 C.F.R. § 404, subst. P, app. 2, § 200(d)-(e).

## B. Determination of "Not Disabled" by the ALJ

In the case at bar, the first four steps of the five-part test to determine whether a person is disabled are not at issue: (1) plaintiff is not currently engaged in substantial gainful activity; (2) plaintiff suffers from severe impairments; (3) plaintiff does not suffer from an impairment presumed severe enough to preclude any gainful work; and (4) plaintiff is unable to perform his past relevant work because it exceeds his residual functional capacity. The issue in this case concerns the fifth step: whether or not plaintiff can perform other work existing in the national economy. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3rd Cir.1993).

Plaintiff argues that the ALJ did not consider Social Security Ruling ("SSR") 96–9p. (D.I. 14 at 11) Plaintiff argues that the administrative record is defective, in that the prior claim file(s) is missing, plaintiff's DIB insured status depends on a prior decision, an extended period of eligibility and trial work period may apply, and that a prior SSI award would also be important. (*Id.* at 13–16) Plaintiff argues that the ALJ did not consider plaintiff's combined impairments at step 3. (*Id.* at 17) Plaintiff argues that he did not concede non-disability. (*Id.* at 17–18) Furthermore, plaintiff argues that treating physician Dr. Gorrin's report was owed more weight. (*Id.* at 18)

Defendant argues that the Commissioner's final decision of nondisability is supported by substantial evidence of plaintiff's residual functional capacity to perform sedentary work. (D.I. 17 at 24) The evidence includes plaintiff's own notation of decreased back pain and his desire to return to work several months after he was in his 1997 automobile accident. (*Id.* at 29) Defendant argues the ALJ correctly discounted plaintiff's allegations of severe impairment based on inconsistencies in plaintiff's own statements. (*Id.* at 32) Furthermore, defendant argues the ALJ properly evaluated Dr. Gorrin's report. (*Id.* at 33) Defendant concludes that any deficiencies in the prior record are not relevant because the issue is whether plaintiff was

disabled between May 22, 1997 and March 31, 1998 when plaintiff's eligibility for disability benefits expired. (*Id.* at 38)

### 1. The ALJ Adequately Considered SSR 96–9p.

Plaintiff argues that the ALJ did not consider SSR 96–9p in making his determination of nondisability. (D.I. 14 at 11) Social Security Ruling 96–9p addresses the claimant who can perform a limited range of sedentary work, is not yet 50 years old, has roughly a high school education, and has no transferrable job skill. SSR 96–9p. One of the many kinds of limitations that a claimant may have that reduces his ability to perform a full range of sedentary work is a complete inability to stoop. (*Id.*) In this situation, a finding of disabled would usually apply. (*Id.*) Plaintiff argues that not only is he in this specific limitation, but he also has further limitations and, thus, should be considered disabled. (D.I. 14 at 12)

■ Plaintiff's argument is not persuasive. While finding 6 of the ALJ's report found plaintiff had nonexertional limitations which made it "impossible for him to . . . stoop. . ." (D.I. 6 at 28), in finding 8, the ALJ noted it was only accorded "moderate weight" because of later evidence received into the record. (*Id.*) In fact, the record shows that plaintiff's contention that he cannot stoop at all is contradicted by the Physical Residual Functional Capacity Assessment ("PRFCA") that was performed April 27, 1998, shortly after plaintiff's eligibility expired. (*Id.* at 168–75) There, the finding was that plaintiff could stoop "occasionally." (*Id.* at 170) Later PRFCA's on July 20, 1998 and June 26, 1999 also found plaintiff capable of occasional stooping. (*Id.* at 178, 244) Social Security Ruling 96–9p states that restriction to occasional stooping only minimally erodes the occupational base of sedentary work. SSR 96–9p. Since plaintiff was found capable of occasional stooping, the limitation of SSR 96–9p leading to a usual finding of disabled is not present in plaintiff's case.

In addition, the ALJ specifically asked vocational expert Dr. Ryan if there were jobs existing that an individual with a vocational profile similar to plaintiff could perform and Dr. Ryan answered affirmatively. (D.I. 6 at 296–97) This profile included the proviso that the work not involve bending. (*Id.*) Because the vocational expert found there was a significant number of jobs that a person with limitations similar to plaintiff's could perform, the ALJ's finding that plaintiff is not disabled is supported by the requisite substantial evidence.

### 2. The Defects in the Administrative Record Are Not Relevant.

■ Plaintiff argues that the administrative record is defective in that it does not include copies of the prior claim file(s). (D.I. 14 at 13) Plaintiff argues that this is relevant because had he been previously found disabled and entitled to Disability Insurance Benefits ("DIB"), his insured status would likely have extended into the future beyond March 31, 1998, the date that the record shows his insured status expired. (*Id.* at 13–14) In addition, if there had been a finding of disability previously, plaintiff's work period in 1996–97 might count as a trial work period that would not interfere with his continued receipt of DIB. (*Id.* at 15)

The record indicates, however, that plaintiff was not eligible for DIB from his earlier claim filed September 26, 1994 because he lacked insured status at that time. (D.I. 17 at 37) Because plaintiff was not entitled to receive DIB benefits, the issues of extension of insured status and a trial work period must fail. *See Barnhart v. Walton,* 535 U.S. 212, 122 S.Ct. 1265,

1269, 152 L.Ed.2d 330 (2002); *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1459–60 (9th Cir.1995).

■ Plaintiff also argues that even if he had not been eligible for DIB previously, if he had received Supplemental Security Income ("SSI"), that receipt is also conditioned on a finding of disability which would entitle him to argue that the agency should respect its prior determination that certain facts established disability. (*Id.* at 15–16)

The court finds that whether plaintiff was disabled at any prior time is not relevant. The present issue is whether plaintiff was disabled between May 22, 1997, when plaintiff alleges his disability began, and March 31, 1998, when his insured status expired.

### 3. The ALJ Adequately Considered the Cumulative Effect of Plaintiff's Combined Impairments.

Plaintiff argues that the ALJ did not consider the combination of his impairments at step three of the disability determination. (D.I. 14 at 17) The ALJ must consider a claimant's impairments in combination throughout the sequential-evaluation process including step three. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523 (2002).

In this case, the ALJ explicitly stated that he considered the **entire** evidence in making his conclusion that plaintiff was not disabled prior to the expiration of his insured status on March 31, 1998. (D.I. 6 at 23) (emphasis added) In addition, in finding 3 of his decision, the ALJ stated that plaintiff's impairments did not meet or equal in severity the criteria of any of the impairments listed in the regulations. (*Id.* at 27) (emphasis added) Significantly, plaintiff has provided no evidence to show how his impairments or combination of impairments meet or equal any listing.

### 4. Plaintiff is Not Entirely Credible.

Plaintiff argues that his desire to return to work, made at a doctor's visit on November 14, 1997, does not rebut any claim of disability. (D.I. 14 at 17–18) Plaintiff argues that his will to work could not, unfortunately, overcome his serious physical and mental restrictions. (*Id.* at 18)

■ The court finds that this is an issue of plaintiff's credibility. The ALJ, in making his finding of nondisability, stated that plaintiff was not entirely credible. (D.I. 6 at 23–24) In particular, the ALJ points to discrepancies in the medical record that are at odds with plaintiff's own description of his activities and life style prior to the time plaintiff's insured status expired. (*Id.*) Credibility determinations regarding a claimant's subjective complaints are reserved for the ALJ. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983). The court defers to the ALJ's credibility finding.

### 5. Dr. Gorrin's Report was Appropriately Evaluated.

Plaintiff argues that the opinion of his treating physician, Dr. Gorrin, was not evaluated properly and that Dr. Gorrin's conclusion that plaintiff was unable to work was erroneously rejected by the ALJ. (D.I. 14 at 18) By regulation and Third Circuit law, a treating physician's report is important evidence that must be given significant consideration. 20 C.F.R. § 404.1527(d)(2) (2002); *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir.2001).

■ The court finds that the ALJ properly evaluated Dr. Gorrin's report. While the findings and opinions of treating physicians are entitled to great weight, the ALJ is not bound by the treating physician's opinion. The opinion may be rejected if it is inconsistent with other substantial evi-

dence. *See* 20 C.F.R. § 404.1527(d)(2) (2002). The court finds that other medical opinions in the record are inconsistent with Dr. Gorrin's opinion. In particular, Dr. Gorrin's opinion conflicts with that of Dr. Coveleski, the findings of consultative psychological examiners, the state agency medical and psychological consultants, plaintiff's own description of his activities and limitations, and plaintiff's history with Dr. Gorrin. (D.I. 6 at 168–83, 216–28, 242–49) The ALJ set forth valid reasons for according the opinion reduced weight, thus complying with regulations. The court, therefore, finds no reason to overrule the ALJ's evaluation.

## VI. CONCLUSION

For the reasons stated above, the court shall grant defendant's motion and deny plaintiff's motion. An appropriate order shall issue.