**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES E. POWELL,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 02-7107
(D.C. No. 01-CV-517-P)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ** , **O'BRIEN** , and **McCONNELL** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff James E. Powell appeals from a district court order affirming the Commissioner's denial of social security disability benefits. Powell claims he is disabled as a result of a seizure disorder with associated cognitive impairment and headaches. The Administrative Law Judge (ALJ) found Powell was capable of returning to past work and, accordingly, determined he was not disabled at step four of the controlling five-step analysis. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10 th Cir. 1988) (discussing steps). Powell challenged this decision in the district court on three grounds, which he continues to press on appeal: the ALJ should have found Powell presumptively disabled at step three under the listing for epilepsy; the ALJ improperly substituted her own opinions for those of Powell's examining physicians; and the ALJ discounted Powell's credibility on the basis of inaccurate facts. Directing our review exclusively to the specified issues, we agree with the district court that the ALJ's decision in these challenged respects is supported by substantial evidence and consistent with applicable legal standards, and we therefore affirm. *Berna v. Chater*, 101 F.3d 631, 632 (10 th Cir. 1996).

### Step-Three Listing Determination

The relevant listing for the type of seizures presented in Powell's case requires:

> Minor motor seizures (petit mal, psychomotor, or focal), documented
> by EEG and by detailed description of a typical seizure pattern,

including all associated phenomena; occurring more frequently than once weekly *in spite of at least 3 months of prescribed treatment* . With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03 (italics altered). Responding to advances in anti-convulsive therapy, the Social Security Administration sharpened the focus of the prescribed-treatment condition emphasized above by issuing a policy statement and amending the introductory section of the convulsive-disorder listings to direct that a finding of disability cannot be made without evidence demonstrating therapeutic blood serum levels of the medications prescribed for an epileptic claimant. *See id.* at § 11.00(A); Soc. Sec. Rul. 87-6, Titles II and XVI: The Role of Prescribed Treatment in the Evaluation of Epilepsy, 1987 WL 109184 (1987). A failure to satisfy this condition undermines Powell's claim that he was entitled to a finding of disability at step three under § 11.03.

Powell has been treated with a regimen combining the anti-convulsive medications Dilantin (phenytoin) and Tegretol (carbamazapine). There are several studies in the record assessing his blood levels for these two medications. On no occasion were normal therapeutic levels found for both. *See* App. II at 116, 123, 167; *see also id.* at 117, 121 (reports of medical consultant noting treating physician's failure to routinely monitor blood serum levels and reciting sub-therapeutic results found when such tests were ordered). Moreover, Powell

presented no evidence that these low blood serum levels were the result of an extenuating individual idiosyncracy in absorption or metabolism of the drugs.[1] Indeed, he has instead admitted to some neglect in taking his medication. *Id.* at 192; *see also id.* at 156 (medical consultant report noting statement by Powell's wife that Powell has more trouble "when he doesn't take his medicine," indicated lack of compliance with prescribed regimen). In sum, "the [ALJ's] determination

---

[1]      The relevant policy statement notes that "in extremely rare cases" such an idiosyncracy could cause sub-therapeutic blood levels in an individual complying with a prescribed drug regimen. SSR 87-6, 1987 WL 109184, at *3. Given the rarity of this situation, however, the policy statement directs that any exception to the presumption of noncompliance "must be based on specific descriptive evidence provided by the treating physician." *Id.* Powell insists the ALJ had a duty to pursue this unlikely possibility on his behalf by soliciting such evidence from his treating physician, citing § 11.00, which states that when drug levels are low, "the information obtained from the treating source should include the physician's statement as to why the levels are low." Powell confuses the specification of what would be relevant evidence with the assumption of an affirmative obligation to develop it. The regulations make it clear that, as a general matter, the claimant must provide the evidence to support his claim. *See* 20 C.F.R. §§ 404.1514, 404.1516. Powell cites no authority relieving him of this obligation with respect to the requirements for a favorable decision under § 11.03 at step three–a stage at which he bears the burden of proof. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376-77 (10th Cir. 1992). In any event, given the rarity of the condition in question, the speculative nature of Powell's present suggestion that it could be the cause of his sub-therapeutic blood serum levels (particularly in the face of other evidence indicating that he did not comply with his prescribed regimen), and the failure of Powell's counsel to ask the ALJ to pursue the matter, we do not think the ALJ erred in failing to anticipate and assist Powell's current effort to avoid the consequences of his failure of proof under the listing. *See Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997) (explaining prerequisites for failure-to-develop-the-record argument in context of ALJ's established obligation to order consultative examination).

that [Powell] has not demonstrated compliance with his therapeutic regimen is supported by substantial evidence," and, thus, properly precluded a decision in Powell's favor at step three. *Brown v. Bowen*, 845 F.2d 1211, 1215 (3d Cir. 1988); *see also Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (holding seizure-based impairment properly discounted for noncompliance with prescribed drug treatment, presumptively evidenced by sub-therapeutic blood levels pursuant to predecessor of policy statement noted above).

### Substitution of ALJ's Opinion for those of Examining Physicians

Powell also contends he has a mental impairment indicated by a loss of memory performance. His primary support for this contention is an October 1998 report from Dr. McGirk, an examining psychologist. Despite obtaining normal results for Powell on memory tasks, Dr. McGirk diagnosed a "cognitive disorder NOS,"[2] evidently based on the concurrence of the seizure disorder and Powell's anecdotal account of memory problems. *See* App. II at 142-45. Several months later, another psychologist reviewed Powell's records, noted that Dr. McGirk had diagnosed a disorder without any clinically identifiable symptoms, and concluded

---

[2] "NOS" is short for "not otherwise specified," and the cited diagnosis refers to a "cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition" that does not fit a more specifically defined category of disorder. *Diagnostic & Statistical Manual of Mental Disorders (DSM-IV-TR)*, at 179-80 (Revised 4th ed. 2000).

-5-

that Powell had "no medically determinable impairment." *Id.* at 147-48. The ALJ adopted the latter assessment. Powell argues that in doing so the ALJ improperly substituted her opinion for that of Dr. McGirk. We disagree. The ALJ simply evaluated the relevant medical record and sided–quite reasonably, as the evidence noted below reflects–with one expert rather than another.

Powell's memory functioning was assessed on several occasions and never found deficient. When he was first referred in September 1997 to Dr. Udonta, the neurologist who has treated him ever since, Powell's mental status, specifically including memory, was evaluated without any indication of problems. *See id.* at 136. Thirteen months later, as noted above, Powell again produced normal results on memory tasks for Dr. McGirk. In March 1999, Powell was seen by a second neurologist, Dr. Lawton, for assessment of his seizure condition and treatment. Dr. Lawton noted Powell's "[m]emory appear[ed] intact," though a "complaint of memory loss" was "being evaluated elsewhere." *Id.* at 157. That evaluation was conducted by Dr. Green, who in April 1999 reported that "no confirmation of [memory loss] was found in test data" and, indeed, identified immediate recall as one of Powell's cognitive *strengths*. *Id.* at 161-62 (also noting Powell performed average on long-term memory tasks and above average on short-term tasks). In light of this record, we cannot say that the ALJ's rejection of a cognitive/memory impairment lacks substantial evidentiary support.

In a related but much more perfunctory argument, Powell notes Dr. Green's narrative report concluded with the "diagnostic impression" of a "Pain Disorder associated with psychological factors and general medical condition," *id.* at 162, and insists that the ALJ must have substituted her opinion for this expert opinion as well. However, Powell fails to mention that Dr. Green attached to his report an "Assessment of Ability to Engage in Work Related Activities (Mental)," in which he discounted the vocational significance of the suggested pain disorder by rating as "slight" or "none" the degree of occupational/performance/social adjustments Powell would have to make to work on a daily basis and imposing no associated job limitations. *Id.* at 163-65. The mere presence of a condition–without any demonstrable work-related impact–will not support a disability claim. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10 th Cir. 1997) (following *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *see also* 20 C.F.R. § 404.1521. Thus, the ALJ adhered to, not diverged from, the findings of Dr. Green.

## ALJ's Assessment of Powell's Credibility

Powell argues that the ALJ's analysis of his credibility on certain matters was tainted by reliance on factual inaccuracies. We conclude that the alleged inaccuracies are, rather, reasonable characterizations of the record. First, the ALJ noted that Powell did not seek different drugs or treatment for his seizures when, as he alleged, his condition did not improve at all on the medications prescribed.

Powell objects to this statement, insisting that he took the three medications prescribed by his treating physician. But this misses the ALJ's point, which clearly followed upon the examining neurologist's observations that Powell "has never been on any of the newer and often more effective medications for seizures of this type, of which there are approximately six at this time," and that "[p]roper management of [his condition] would include . . . use of [such] alternative medications if [he] continues to have difficulty that can be documented while Tegretol and Dilantin levels are proven to be therapeutic." App. II at 156-57.

Powell takes issue with the ALJ's statement that he had not told his doctors about "feeling almost asleep or other side effects of medications," *id.* at 18, consistent with what he testified to at the hearing, *id.* at 192 (Powell stating that he is "almost asleep all the time now" and would "never be able to function" if he took any more medication). Powell cites two instances early on in his treatment when he told Dr. Udonta that he felt "some fatigue and 'sleepiness'" and "some fatigue" attributable to the Dilantin, *id.* at 129, 130, and argues that the ALJ misrepresented the record. There is obviously a large gulf between reporting "some" fatigue or sleepiness to his physician and Powell's claim at the hearing that he was constantly on the verge of incapacitation. While the ALJ might have been clearer in referring to this divergence, we will not assume a factual misrepresentation by an ALJ when her statement can readily be understood as a

reasonable and relevant comment on a discernable discrepancy in the claimant's account of his condition.

Powell insists the ALJ mischaracterized the record when she stated that his general complaint of being "in constant pain" voiced to Dr. Green, the examining psychologist who suggested the presence of a mental pain disorder as a result, *see id.* at 161-62 (also noting Powell rated severity of this pain to "a rather marked degree"), had not been reported by him elsewhere. The unique nature of this complaint led the ALJ to ask about it at the hearing, where Powell said he had a dull headache behind his eyes all of the time and also referred to arthritis in his shoulders. *Id.* at 200. Powell now ignores his belated and unsubstantiated claim about arthritis and focuses on headaches, noting that he alleged "almost constant headache on left side" in a reconsideration disability report, *id.* at 89, and that his current (part-time) employer submitted a letter stating Powell "periodically" must leave work due to headaches, *id.* at 168. Actually, neither of these references is fully consistent with either his complaint to Dr. Green or the account of that complaint he gave at the hearing. In any event, it seems clear from context that the ALJ simply meant Powell never voiced the same broad complaint of *constant marked pain* to another *doctor*, which is an inconsistency reasonably to be noted (further, specifically as to headaches, we note Powell often did not mention them and never told a doctor that he had them constantly or on a daily basis).

Finally, Powell contends the ALJ wrongly criticized him for failing to report the frequency of his seizures to his doctors. Powell cites several medical records reciting estimates of the number of seizures he was having. Actually, the ALJ referred to two different types of inconsistency in Powell's reports of his seizures and neither of these is refuted by Powell's citations to the record. First, the ALJ commented that Powell "has described his seizures in a fairly consistent way, but has been *inconsistent* in reporting *the time of their origin* ." *Id.* at 17 (emphasis added). The latter criticism has substantial support in the record. *See, e.g.*, *id.* at 175 ("[Powell] reports he began having trouble two years ago [i.e., 1995] with intermittent [seizure] episodes"); *id.* at 134 (reciting "history of paroxysmal spells since 1991"); *id.* at 156 (reciting Powell "has had episodes" of seizures "[b]eginning in 1985"). Second, the ALJ observed that Powell's "reports of the frequency of his seizures are not reported to doctors and are inconsistent with [his] activities." *Id.* at 18. The ALJ obviously did not mean that Powell had failed to give any frequency estimates to his doctors–she refers to these at various points in her decision; rather, she was commenting on a substantial discrepancy between Powell's claim at the hearing that he was having one to four seizures a day and many of his reports to doctors indicating much lower rates on the order of one to four a week, *see, e.g.*, *id.* at 130, 156, 160.

In sum, Powell's objections do not warrant any disturbance of the ALJ's decision under the governing standard of review. And, as we have reached this conclusion within the analytical confines of the ALJ's rationale of decision, the concerns Powell raises about post hoc justification of administrative action, *see generally Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943), are not implicated by our disposition. Thus, we have no occasion to decide whether the principles of *Chenery* and its progeny, developed in other administrative review settings, should be mechanically imported into the particular context of social security disability proceedings, *see generally Sims v. Apfel*, 530 U.S. 103, 108-12 (2000) (citing unique "inquisitorial rather than adversarial" character of social security proceedings as reason for not applying traditional administrative issue-exhaustion rule on judicial review); *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989) (noting judicial review statute governing social security cases "suggest[s] a degree of direct interaction between a federal court and an administrative agency alien to traditional review of agency action under the Administrative Procedures Act"). We acknowledge that some other circuits have done so, though without explicit consideration of the distinctive aspects of such proceedings noted by the Court in *Sims* and *Hudson*. *See, e.g.*, *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7 th Cir. 2003); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge