# SIMS *v.* APFEL, COMMISSIONER OF SOCIAL SECURITY

No. 98–9537.  Argued March 28, 2000—Decided June 5, 2000

THOMAS, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II–A, in which STEVENS, O'CONNOR, SOUTER, and GINSBURG, JJ., joined, and an opinion with respect to Part II–B, in which STEVENS, SOUTER, and GINSBURG, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 112. BREYER, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA and KENNEDY, JJ., joined, *post*, p. 114.

*Sarah H. Bohr* argued the cause for petitioner. With her on the briefs were *Chantal J. Harrington, Gary R. Parvin,* and *Jon C. Dubin.*

*Malcolm L. Stewart* argued the cause for respondent. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Ogden, Deputy Solicitor General Kneedler, William Kanter,* and *Robert D. Kamenshine.**

JUSTICE THOMAS announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II–A, and an opinion with respect to Part II–B, in which JUSTICE STEVENS, JUSTICE SOUTER, and JUSTICE GINSBURG join.

A person whose claim for Social Security benefits is denied by an administrative law judge (ALJ) must in most cases,

---

**Rochelle Bobroff, Michael Schuster,* and *Robert E. Rains* filed a brief for the American Association of Retired Persons et al. as *amici curiae* urging reversal.

before seeking judicial review of that denial, request that the Social Security Appeals Council review his claim. The question is whether a claimant pursuing judicial review has waived any issues that he did not include in that request. We hold that he has not.

I

In 1994, petitioner Juatassa Sims filed applications for disability benefits under Title II of the Social Security Act, 49 Stat. 622, 42 U. S. C. § 401 *et seq.*, and for supplemental security income benefits under Title XVI of that Act, 86 Stat. 1465, 42 U. S. C. § 1381 *et seq.* She alleged disability from a variety of ailments, including degenerative joint diseases and carpal tunnel syndrome. After a state agency denied her claims, she obtained a hearing before a Social Security ALJ. See generally *Heckler* v. *Day*, 467 U. S. 104, 106–107 (1984) (describing stages of review of claims for Social Security benefits). The ALJ, in 1996, also denied her claims, concluding that, although she did have some medical impairments, she had not been and was not under a "disability," as defined in the Act. See 42 U. S. C. §§ 423(d) (1994 ed. and Supp. III) and 1382c(a)(3) (1994 ed., Supp. III); *Sullivan* v. *Zebley*, 493 U. S. 521, 524–526 (1990).

Petitioner then requested that the Social Security Appeals Council review her claims. A claimant may request such review by completing a one-page form provided by the Social Security Administration (SSA)—Form HA–520—or "by any other writing specifically requesting review." 20 CFR § 422.205(a) (1999). Petitioner, through counsel, chose the latter option, submitting to the Council a letter arguing that the ALJ had erred in several ways in analyzing the evidence. The Council denied review.

Next, petitioner filed suit in the District Court for the Northern District of Mississippi. She contended that (1) the ALJ had made selective use of the record; (2) the questions the ALJ had posed to a vocational expert to determine petitioner's ability to work were defective because they omitted

several of petitioner's ailments; and (3) in light of certain peculiarities in the medical evidence, the ALJ should have ordered a consultative examination. The District Court rejected all of these contentions. App. 74–84.

The Court of Appeals for the Fifth Circuit affirmed. 200 F. 3d 229 (1998). That court affirmed on the merits with regard to petitioner's first contention. With regard to the second and third contentions, it concluded that, under its decision in *Paul* v. *Shalala*, 29 F. 3d 208, 210 (1994), it lacked jurisdiction because petitioner had not raised those contentions in her request for review by the Appeals Council. We granted certiorari, 528 U. S. 1018 (1999), to resolve a conflict among the Courts of Appeals over whether a Social Security claimant waives judicial review of an issue if he fails to exhaust that issue by presenting it to the Appeals Council in his request for review. Compare *Paul, supra,* at 210; *James* v. *Chater,* 96 F. 3d 1341, 1343–1344 (CA10 1996), with *Harwood* v. *Apfel,* 186 F. 3d 1039, 1042–1043 (CA8 1999); *Johnson* v. *Apfel,* 189 F. 3d 561, 563–564 (CA7 1999).[1]

## II

### A

The Social Security Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action" in federal district court. 42 U. S. C. § 405(g). But the Act does not define "final decision," instead leaving it to the SSA to give meaning to that term through regulations. See § 405(a); *Weinberger* v. *Salfi,* 422 U. S. 749, 766 (1975). SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Com-

---

[1] We agree with the parties that, even were a court-imposed issue-exhaustion requirement proper, the Fifth Circuit erred in treating it as jurisdictional. Cf. *Mathews* v. *Eldridge,* 424 U. S. 319, 328 (1976).

missioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision. See 20 CFR §§ 404.900(a)(4)–(5), 404.955, 404.981, 422.210(a) (1999).[2] If a claimant fails to request review from the Council, there is no final decision and, as a result, no judicial review in most cases. See § 404.900(b); *Bowen* v. *City of New York*, 476 U. S. 467, 482–483 (1986). In administrative-law parlance, such a claimant may not obtain judicial review because he has failed to exhaust administrative remedies. See *Salfi, supra*, at 765–766.

The Commissioner rightly concedes that petitioner exhausted administrative remedies by requesting review by the Council. Petitioner thus obtained a final decision, and nothing in § 405(g) or the regulations implementing it bars judicial review of her claims.

Nevertheless, the Commissioner contends that we should require issue exhaustion in addition to exhaustion of remedies. That is, he contends that a Social Security claimant, to obtain judicial review of an issue, not only must obtain a final decision on his claim for benefits, but also must specify that issue in his request for review by the Council. (Whether a claimant must exhaust issues before the ALJ is not before us.) The Commissioner argues, in particular, that an issue-exhaustion requirement is "an important corollary" of any requirement of exhaustion of remedies. Brief for Respondent 13. We think that this is not necessarily so and that the corollary is particularly unwarranted in this case.

Initially, we note that requirements of administrative issue exhaustion are largely creatures of statute. *Marine Mammal Conservancy, Inc.* v. *Department of Agriculture*, 134 F. 3d 409, 412 (CADC 1998). Our cases addressing issue

---

[2] Part 404 of 20 CFR (1999) applies to Title II of the Act. The regulations governing Title XVI, which can be found at 20 CFR pt. 416 (1999), are, as relevant here, not materially different. We will therefore omit references to the latter regulations.

exhaustion reflect this fact. For example, in *Woelke & Romero Framing, Inc.* v. *NLRB,* 456 U. S. 645 (1982), we held that the Court of Appeals lacked jurisdiction to review objections not raised before the National Labor Relations Board. We so held because a statute provided that " '[n]o objection that has not been urged before the Board . . . shall be considered by the court.' " *Id.,* at 665 (quoting 29 U. S. C. § 160(e) (1982 ed.)). Our decision in *FPC* v. *Colorado Interstate Gas Co.,* 348 U. S. 492, 497–498 (1955), followed similar reasoning. See also *United States* v. *L. A. Tucker Truck Lines, Inc.,* 344 U. S. 33, 36, n. 6 (1952) (collecting statutes); *Washington Assn. for Television and Children* v. *FCC,* 712 F. 2d 677, 681–682, and n. 6 (CADC 1983) (interpreting issue-exhaustion requirement in 47 U. S. C. § 405 (1982 ed.) and collecting statutes). Here, the Commissioner does not contend that any statute requires issue exhaustion in the request for review.

Similarly, it is common for an agency's regulations to require issue exhaustion in administrative appeals. See, *e. g.,* 20 CFR § 802.211(a) (1999) (petition for review to Benefits Review Board must "lis[t] the specific issues to be considered on appeal"). And when regulations do so, courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues. See, *e. g., South Carolina* v. *United States Dept. of Labor,* 795 F. 2d 375, 378 (CA4 1986); *Sears, Roebuck and Co.* v. *FTC,* 676 F. 2d 385, 398, n. 26 (CA9 1982). Yet, SSA regulations do not require issue exhaustion. (Although the question is not before us, we think it likely that the Commissioner could adopt a regulation that did require issue exhaustion.)

It is true that we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation. But the reason we have done so does not apply here. The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider

arguments not raised before trial courts. As the Court explained in *Hormel* v. *Helvering*, 312 U. S. 552 (1941):

"Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding." *Id.*, at 556.

As we further explained in *L. A. Tucker Truck Lines*, courts require administrative issue exhaustion "as a general rule" because it is usually "appropriate under [an agency's] practice" for "contestants in an adversary proceeding" before it to develop fully all issues there. 344 U. S., at 36–37. (We also spoke favorably of issue exhaustion in *Unemployment Compensation Comm'n of Alaska* v. *Aragon*, 329 U. S. 143, 154–155 (1946), without relying on any statute or regulation, but in that case the waived issue had not been raised before the District Court, see *id.*, at 149, 155.)

But, as *Hormel* and *L. A. Tucker Truck Lines* suggest, the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding. Cf. *McKart* v. *United States*, 395 U. S. 185, 193 (1969) (application of doctrine of exhaustion of ad-

ministrative remedies "requires an understanding of its purposes and of the particular administrative scheme involved"); *Salfi*, 422 U. S., at 765 (same). Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest. *Hormel*, *L. A. Tucker Truck Lines*, and *Aragon* each involved an adversarial proceeding. See *Hormel, supra,* at 554, 556; *L. A. Tucker Truck Lines, supra,* at 36; *Aragon v. Unemployment Compensation Comm'n of Alaska,* 149 F. 2d 447, 449–452 (CA9 1945), aff'd in part and rev'd in part, 329 U. S. 143 (1946). (In *Hormel,* we allowed an exception to the issue-exhaustion requirement. 312 U. S., at 560.) Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker. More generally, we have observed that "it is well settled that there are wide differences between administrative agencies and courts," *Shepard v. NLRB,* 459 U. S. 344, 351 (1983), and we have thus warned against reflexively "assimilat[ing] the relation of . . . administrative bodies and the courts to the relationship between lower and upper courts," *FCC v. Pottsville Broadcasting Co.,* 309 U. S. 134, 144 (1940).

## B

The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. Although "[m]any agency systems of adjudication are based to a significant extent on the judicial model of decisionmaking," 2 K. Davis & R. Pierce, Administrative Law Treatise § 9.10, p. 103 (3d ed. 1994), the SSA is "[p]erhaps the best example of an agency" that is not, B. Schwartz, Administrative Law 469–470 (4th ed. 1994). See *id.,* at 470 ("The most important of [the SSA's modifications of the judicial model] is the replacement of normal adversary procedure by . . . the 'investigatory model'" (quoting Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1290 (1975))). Social Security proceed-

ings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, see *Richardson v. Perales*, 402 U. S. 389, 400–401 (1971), and the Council's review is similarly broad. The Commissioner has no representative before the ALJ to oppose the claim for benefits, and we have found no indication that he opposes claimants before the Council. See generally Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289, 1301–1305, 1325–1329 (1997).

The regulations make this nature of SSA proceedings quite clear. They expressly provide that the SSA "conduct[s] the administrative review process in an informal, nonadversary manner." 20 CFR § 404.900(b) (1999). They permit—but do not require—the filing of a brief with the Council (even when the Council grants review), § 404.975, and the Council's review is plenary unless it states otherwise, § 404.976(a). See also § 404.900(b) ("[W]e will consider at each step of the review process any information you present as well as all the information in our records"). The Commissioner's involvement in the Appeals Council's decision whether to grant review appears to be not as a litigant opposing the claimant, but rather just as an adviser to the Council regarding which cases are good candidates for the Council to review pursuant to its authority to review a case *sua sponte*. See §§ 404.969(b)–(c); *Perales, supra*, at 403. The regulations further make clear that the Council will "evaluate the entire record," including "new and material evidence," in determining whether to grant review. § 404.970(b). Similarly, the notice of decision that ALJ's provide unsuccessful claimants informs them that if they request review, the Council will "consider all of [the ALJ's] decision, even the parts with which you may agree," and that the Council might review the decision "even if you do not ask it to do so." App. 25–27. Finally, Form HA–520, which

the Commissioner considers adequate for the Council's purposes in determining whether to review a case, see § 422.205(a), provides only three lines for the request for review, and a notice accompanying the form estimates that it will take only 10 minutes to "read the instructions, gather the necessary facts and fill out the form." The form therefore strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review. Given that a large portion of Social Security claimants either have no representation at all or are represented by non-attorneys, see Dubin, *supra*, at 1294, n. 29, the lack of such dependence is entirely understandable.

Thus, the *Hormel* analogy to judicial proceedings is at its weakest in this area. The adversarial development of issues by the parties—the "com[ing] to issue," 312 U. S., at 556—on which that analogy depends simply does not exist. The Council, not the claimant, has primary responsibility for identifying and developing the issues. We therefore agree with the Eighth Circuit that "the general rule [of issue exhaustion] makes little sense in this particular context." *Harwood*, 186 F. 3d, at 1042.

Accordingly, we hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. The judgment of the Fifth Circuit is reversed, and the case is remanded for further proceedings.

*It is so ordered.*

JUSTICE O'CONNOR, concurring in part and concurring in the judgment.

In most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court. On this underlying principle of administrative law, the Court is unanimous. See *ante*, at 108; *post*, at 114–115

(BREYER, J., dissenting).    In the absence of a specific statute
or regulation requiring issue exhaustion, however, such a
rule is not always appropriate.    The inquiry requires careful
examination of "the characteristics of the particular adminis-
trative procedure provided."    *McCarthy* v. *Madigan*, 503
U. S. 140, 146 (1992).    The Court's opinion provides such an
examination, and reaches the correct result.    Accordingly,
I join Parts I and II–A of the Court's opinion, as well as
its judgment.    I write separately because, in my view, the
agency's failure to notify claimants of an issue exhaustion
requirement in this context is a sufficient basis for our deci-
sion.    Requiring issue exhaustion is particularly inappropri-
ate here, where the regulations and procedures of the Social
Security Administration (SSA) affirmatively suggest that
specific issues need not be raised before the Appeals Council.

   Although the SSA's regulations warn claimants that com-
pletely failing to request Appeals Council review will forfeit
the right to seek judicial review, see 20 CFR § 404.900(b)
(1999), the regulations provide no notice that claimants must
also raise specific issues before the Appeals Council to pre-
serve them for review in federal court, see *ante*, at 108 (SSA
regulations do not require issue exhaustion).    To the con-
trary, the relevant regulations and procedures indicate that
issue exhaustion before the Appeals Council is *not* required.
To request Appeals Council review, a claimant need not
file a brief.    See § 404.975.    Rather, he can file either Form
HA–520, "Request for Review of Hearing Decision/Order,"
or "any other writing specifically requesting review."
§ 422.205(a).    Form HA–520, the suggested means of re-
questing review, provides only three lines (roughly two
inches) for the statement of issues and grounds for appeal,
and the SSA estimates that it should take a total of 10 min-
utes to read the instructions, collect the relevant informa-
tion, and complete the form, see 58 Fed. Reg. 28596 (1993);
*ante*, at 111–112.    Moreover, Appeals Council review is ple-
nary unless the Council informs the claimant otherwise in

writing, see § 404.976(a); as the notice of decision of the Administrative Law Judge (ALJ) to petitioner stated, if she requested review before the Appeals Council, "the Council will consider all of [the ALJ's] decision . . . . Requesting review places the entire record of your case before the Council." See App. 26–27.

JUSTICE BREYER concedes that these factors "might mislead the Social Security claimant" to believe that issue exhaustion is not required. *Post*, at 118 (dissenting opinion). He nonetheless contends that this is not a problem because the SSA has assured the Court that it "has not invoked [issue exhaustion] in suits brought by claimants who were unrepresented during the Appeals Council proceedings." Brief for Respondent 41–42. As a matter of past practice, the agency's statement appears to be inaccurate. See *Owens* v. *Apfel*, No. 1:98CV1442 (ND Ohio, Aug. 3, 1999), vacated on other grounds, 205 F. 3d 1341 (CA6 2000). But even if this stated policy were uniformly followed, I think it would be unwise to adopt a rule that imposes different issue exhaustion obligations depending on whether claimants are represented by counsel.

In this case, the SSA told petitioner (1) that she could request review by sending a letter or filling out a 1-page form that should take 10 minutes to complete, (2) only that failing to request Appeals Council review would preclude judicial review, and (3) that the Appeals Council would review her entire case for issues. She did everything that the agency asked of her. I would not impose any additional requirements, and would reverse the judgment and remand for further proceedings consistent with this opinion.

JUSTICE BREYER, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE KENNEDY join, dissenting.

Under ordinary principles of administrative law a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency. See

*United States* v. *L. A. Tucker Truck Lines, Inc.*, 344 U. S. 33, 36–37 (1952); *Unemployment Compensation Comm'n of Alaska* v. *Aragon*, 329 U. S. 143, 155 (1946); *Hormel* v. *Helvering*, 312 U. S. 552, 556–557 (1941); see also 2 K. Davis & R. Pierce, Administrative Law Treatise § 15.8, pp. 341–344 (3d ed. 1994). As this Court explained long ago:

> "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. . . . [C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *L. A. Tucker Truck Lines, supra,* at 37.

Although the rule has exceptions, it applies with particular force where resolution of the claim significantly depends upon specialized agency knowledge or practice. In this case, petitioner asked the reviewing court to consider arguments of the kind that clearly fall within the general rule, namely, whether an administrative law judge should have ordered a further medical examination or asked different questions of a vocational expert. No one claims that any established exception to this ordinary "exhaustion" or "waiver" rule applies. See, *e. g.*, *Bethesda Hospital Assn.* v. *Bowen*, 485 U. S. 399, 406–407 (1988) (futility); *Mathews* v. *Eldridge*, 424 U. S. 319, 329, n. 10 (1976) (constitutional claims).

The Court nonetheless concludes that the law requires a new exception. It points out that the ordinary waiver rule as applied to administrative agencies "is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Ante,* at 108–109. And the plurality argues that the agency proceedings here at issue, unlike those before trial courts, are not adversarial proceedings. *Ante,* at 110–112. Although I agree with both

propositions, I do not see how they lead to the plurality's conclusion.

There are, of course, important differences between a court and an administrative agency, but those differences argue *in favor of*, not against, applying the waiver principle here. Cf. *SEC* v. *Chenery Corp.*, 318 U. S. 80, 88–95 (1943). As this Court has explained, the law ordinarily insists that a party invoke administrative processes before coming to court in order to avoid premature interruption of the administrative process and to enable the expert agency to develop the necessary facts. *McKart* v. *United States*, 395 U. S. 185, 193–194 (1969). In addition, exhaustion is required because a

> "complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.*, at 195.

Certain of these reasons apply with equal force to courts and to administrative agencies. Others, such as the notion of "administrative autonomy," apply with special force to agencies. None of them applies *only* to courts. Practical considerations arising out of the agency's familiarity with the subject matter as well as institutional considerations caution strongly against courts' deciding ordinary, circumstance-specific matters that the parties have not raised before the agency—at least where there is no good reason excusing that failure. These considerations apply where a party fails to give an agency an opportunity to correct its own mistake, *i. e.*, to a failure to raise a matter on an internal agency ap-

peal, just as they apply to a failure ever to raise the matter at all. See *id.*, at 194 (exhaustion principles apply equally where "administrative process is at an end and a party seeks judicial review of a decision that was not appealed through the administrative process").

I would add that these ordinary "exhaustion of remedies" rules are particularly important in Social Security cases, where the Appeals Council is asked to process over 100,000 claims each year, Social Security Administration Office of Hearings and Appeals, Key Workload Indicators—Fiscal Year 1999, p. 21 (115,151 requests for Appeals Council review), where many of those cases ultimately find their way to federal court, Administrative Office of the United States Courts, L. Mecham, Judicial Business of the United States Courts: 1998 Report of the Director 144 (Table C–2) (over 14,000 cases in fiscal year 1998), and where the Social Security Act itself stresses their applicability, 42 U. S. C. §§ 405(g), (h). See generally *Shalala* v. *Illinois Council on Long Term Care, Inc.*, 529 U. S. 1, 12–13 (2000); *Weinberger* v. *Salfi*, 422 U. S. 749, 765–766 (1975).

Nor, with one exception, do I see why the nonadversarial nature of the Social Security Administration internal appellate process makes a difference. An initial ALJ proceeding is, after all, itself nonadversarial. *Ante*, at 111 (although claimant may be represented by counsel, the agency itself has no representative present and relies upon the ALJ to "investigate the facts and develop the arguments both for and against granting benefits"). Yet I assume the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ. Cf. *Shalala*, *supra*, at 15 (noting statute's "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court").

Neither does the law in this area disfavor informal proceedings. See *Hormel*, 312 U. S., at 556 ("And the basic reasons which support th[e] general principle [of waiver] appli-

cable to trial courts *make it equally desirable* that parties should have an opportunity to offer evidence on the general issues involved *in the less formal proceedings* before administrative agencies entrusted with the responsibility of fact finding" (emphasis added)). Considerations of time and expense can favor such proceedings. And, since a Social Security claimant is permitted his own counsel or other representative if he wishes, the informality does not necessarily work to his disadvantage. Indeed, the plurality's rule, by interfering with the ordinary ALJ/Appeals Council/District Court order for presenting agency-specific arguments, threatens to complicate judicial review, thereby producing increased delay without any benefit to the agency or to the claimants themselves.

There is, however, one exception, *i. e.*, one way in which the informality of the proceedings may matter. Administrative lawyers are normally aware of the basic "exhaustion of remedies" rules, including the specific waiver principle here at issue. But the internal appellate review proceeding's informality; the absence of a clear statement in the rules or on the Appeals Council instructional form insisting upon the raising of all, not just some, issues; the presence on the instructional form of just a few lines for the listing of issues; and an attached estimate that on average an appellant can "read the instructions, gather the necessary facts and fill out the form" in 10 minutes, see Form HA–520—taken together—might mislead the Social Security claimant. That is, it might make the claimant believe he need not raise every issue before the Appeals Council. *Ante*, at 113–114 (O'CONNOR, J., concurring in part and concurring in judgment).

But the Social Security Administration says that it does not apply its waiver rule where the claimant is not represented. Brief for Respondent 41–42. And I cannot say it is "arbitrary, capricious, [or] an abuse of discretion," 5 U. S. C. § 706(2)(A), to apply the waiver rule when a claimant was represented before the Appeals Council, as was petitioner,

by an *attorney*.   Petitioner's lawyer should have known the basic legal principle: namely, that, with important exceptions, a claimant must raise his objections in an internal agency appellate proceeding or forgo the opportunity later to raise them in court.   The Fifth Circuit, moreover, had precedent applying the general rule in this specific context. *Paul* v. *Shalala,* 29 F. 3d 208, 210–211 (1994).   And far from being misled by the agency's form, petitioner's lawyer followed an alternative procedure, see 20 CFR §§ 422.205(a), 404.968(a) (1999), and filed 19 pages of detailed legal and factual arguments challenging the ALJ's decision.   App. 51–69. In these circumstances, petitioner is accountable for her lawyer's decision—whether neglectful or by design—to reserve some of her objections for federal court.

For these reasons, I would affirm the judgment of the Court of Appeals.