

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2005

# Humphreys v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2644

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Humphreys v. Comm Social Security" (2005). *2005 Decisions.* Paper 1397.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1397

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
No: 04-2644

EILEEN M. HUMPHREYS,
an adult individual,

v.

Appellant

JOANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY

Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 03-cv-00158)
Trial Judge: Ila Jeanne Sensenich, Magistrate Judge

Submitted under Third Circuit LAR 34.1(a)
March 8, 2005

Before: NYGAARD, McKEE and RENDELL,
*Circuit Judges*

(Opinion filed: April 4, 2005)

OPINION

McKEE, *Circuit Judge.*

Eileen M. Humphreys appeals the district court's decision affirming the final

decision of the Commissioner of Social Security denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433. For the reasons that follow, we will affirm.

## I.

Humphreys protectively filed an application for DIB on January 8, 2002, alleging that she had been disabled since February 1, 2001, due to a heart condition, depression, anxiety and hypertension. The state agency denied her application and she requested an administrative hearing. The ALJ denied Humphreys' application, finding that she was not disabled because she could perform a significant number of jobs in the national economy. The ALJ's decision became the final agency decision subject to judicial review when the Appeals Council denied Humphreys' request for review. 20 C.F.R. § 404.981.

Having exhausted her administrative remedies, Humphreys filed a civil action in the district court. On cross-motions for summary judgment, the magistrate judge held that the ALJ's decision was supported by substantial evidence. This appeal followed.

## II.

Our scope of review is limited to determining if the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Medical Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986). The ALJ's decision is the final decision of the Commissioner when the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 107 (2000). Substantial

evidence refers to that evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsberg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971).

**III.**

Because we write only for the parties, we will discuss only briefly state the facts relevant to our disposition of this appeal. On February 6, 2001, Humphreys began reporting heart palpitations to her treating primary care physician, Christine Pascual, D.O. In late February, when the symptoms failed to resolve, Humphreys was hospitalized for triple bypass surgery. She was discharged four days later.

Dr. Pascual's office notes  from February 16, 2000 through December 1, 2001 show that Humphreys complained repeatedly of fatigue as well as stress and depression. On two separate occasions Dr. Pascual assessed Humphreys's ability to work by completing forms that were provided by Humphrey's private disability insurance carrier. On the form dated November 8, 2001, Dr. Pascual indicated that Humphreys could work a total of four hours a day beginning November 21, 2001, and that Humphreys was limited to carrying up to 10 pounds frequently, and eleven to twenty pounds occasionally. On March 15, 2002, Dr. Pascual informed the insurance carrier that Humphreys was unable to work and that she was permanently disabled due to weakness, fatigue, and depression and because she had a marked limitation in her ability to engage in stress situations or in interpersonal

relationships.

On January 10, 2003, Humphreys's new treating physician, Zane H. Gates, M.D., assessed Humprheys' ability to work at the request of Humphreys's private insurance carrier. Dr. Gates confirmed Dr. Pascual's opinion. He opined that Humphreys could not stand or walk and could sit only one hour per day; that she could not cope with stressful situations or interpersonal relationships; and that she had markedly limited cardiac functioning. He thus concluded that she was totally disabled.

On appeal, Humphreys argues that the ALJ erred by failing to accord controlling weight to the opinions of her treating physicians. In particular, she argues that the ALJ erred because he relied on a Physical Residual Functional Capacity Assessment ("PRFCA") prepared by John G. DiLeonardo, a state agency claims adjudicator who is not a physician. That assessment indicated that Humphreys could do light work. The ALJ therefore concluded that she could perform light work.

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), we wrote:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no

4

reason or for the wrong reason. The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.

In choosing to reject the treating physician's assessment the ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Id.* at 317 (citations and internal quotations omitted). Humphreys argues that DiLeonardo is not an acceptable medical source to provide evidence of an impairment as defined by the Social Security Administration, and, therefore, it was reversible error for the ALJ to rely on the PRFCA.

We agree that DiLeonardo is not an acceptable medical source as defined by the regulations. *See* 20 C.F.R. § 404.1513 (Acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). However, we believe that the ALJ's limited reliance on the PRFCA was harmless because it was not the sole basis for his conclusion. The ALJ also relied upon substantial objective medical evidence that contradicted the opinions of Drs. Pascual and Gates, Humphreys' treating physicians.

First, the objective diagnostic findings of record contradicted the treating physicians' opinions. In particular, Humphreys completed an exercise stress test in June 2001, performing at a level of at least 10.1 METS. *See Guides to the Evaluation of Permanent Impairments,* 170-71 (American Medical Association, ed.

5

4th ed. 1995) (explaining that patients who can exercise from *7* to *16* METS are classified as having no resulting limitations); *see also Moore v. Sullivan,* 919 F.2d 901, 904 (5th Cir. 1990) (holding that 10.1 METS is "more than enough" for the performance of light work). Notably, Humphreys was able to exercise for nine minutes and twelve seconds on this exercise stress test, and for eight minutes on a second exercise stress test that she completed in August 2002. She did so without ischemia, chest pain or other significant abnormalities. Clearly, the results of these two stress tests support the ALJ's determination that Humphreys retained the ability to perform light work.

Second, additional diagnostic tests supported the ALJ's finding that the cardiac limitations described by Drs. Pascual and Gates were not reliable. For example, a twenty-four hour Holter monitor showed no major episodes of cardiac abnormality and found no clinical evidence to corroborate Humphreys's claimed heart palpitations. Moreover, Dr. Gates stated that a carotid artery study was negative for significant stenosis after surgery.

Third, the examination findings of record contradicted the opinions of the treating physicians. The treatment notes of Alan C. Ford, M.D., Humphreys' cardiologist, documented consistently normal cardiac examinations and indicated that Humphreys was "doing well." Michael L. Humphrey, D.O., an endocrinologist, reported that she had normal heart rate, rhythm and pulses.

Fourth, Humphreys' treatment history was not consistent with the degree of

6

limitation described by Drs. Pascual and Gates. She completed cardiac rehabilitation in July 2001. After that time, she saw her cardiologist only every four to six months for routine follow-up evaluations, which were consistently normal.

Fifth, Humphreys had no treatment from a mental health professional for her claimed disabling depression or anxiety.

Finally, the extreme functional limitations described by Dr. Gates are not supported by the record evidence. Dr. Gates noted that Humphreys was almost unable to get out of bed; that she could not stand or walk at all; and that she could sit for only one hour a day. However, nothing in the record, even Humphreys' own allegations, provides even minimal support for this extreme level of incapacity.

Overall, the record evidence, even absent reference to the PRFCA, clearly supports the ALJ's decision to reject the opinions of Humphrey's treating physicians that she is permanently disabled.

**VI.**

For all of the above reasons, we will affirm.

7