

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2009

# Linda Williams v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2603

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Linda Williams v. Comm Social Security" (2009). *2009 Decisions.* Paper 1659.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1659

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2603

LINDA WILLIAMS,

Appellant

v.

MICHAEL ASTRUE,
Commissioner of Social Security

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 2-07-cv-04389)
District Judge: Honorable J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2009

Before: CHAGARES, HARDIMAN, <u>Circuit Judges</u>, and ELLIS, <u>Senior District Judge</u>.[*]

(Opinion Filed: March 27, 2009)

OPINION OF THE COURT

ELLIS, <u>Senior District Judge</u>.

---

[*] The Honorable T. S. Ellis III, Senior District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

Linda Williams appeals from a district court order denying her request for review of the decision of an Administrative Law Judge ("ALJ") denying her Supplemental Security Income and entering judgment in favor of the Commissioner of Social Security ("Commissioner"). Because we agree with the district court that substantial evidence supports the ALJ's decision that Williams is not disabled within the meaning of the Social Security Act, we will affirm.

I.

Because we write solely for the benefit of the parties, we only briefly summarize the essential facts. At the time she applied for benefits, Williams was 56 years old. The record reflects she completed the eleventh grade and then studied computers. She worked full time for over a year as a collection agent for television service in a hospital in 2003 and 2004. More recently, she volunteered part time at a friend's child care center. The record also indicates that Williams's medical history includes (i) a seizure disorder that appears to be successfully controlled by medication, (ii) hypertension also well controlled by medication, (iii) a small ganglion cyst in her left foot, (iv) urge incontinence that significantly improved with medication, (v) gastroesophageal reflux disease, (vi) a history of ovarian cysts, (vii) osteoarthritis in her knees, and (viii) disc degeneration in her lumbar spine.

On September 20, 2005, Williams protectively filed for Supplemental Security Income, alleging disability as of May 14, 2005, due to (i) her seizure disorder, (ii) high

blood pressure, (iii) a tumor in her foot, (iv) dizziness, and (v) nerves.[1]  Her initial claim

was denied on March 6, 2006.  At Williams's request, an ALJ held a hearing on

November 15, 2006, at which Williams testified to the above-listed ailments, as well as

pain in her knees and back.  On March 6, 2007, the ALJ issued a decision denying

Williams's application for benefits.

In reaching this decision, the ALJ employed the sequential evaluation process

required by Social Security regulations.  See 20 C.F.R. § 404.1520; Plummer v. Apfel,

186 F.3d 422, 428–29 (3d Cir. 1999).  First, the ALJ found that Williams was not

engaging in substantial gainful activity.  Second, the ALJ determined that Williams's

seizure disorder, hypertension, and osteoarthritis of the back and knees represented severe

impairments.  Third, the ALJ found that none of Williams's impairments, individually or

in combination, met or equaled any of the impairments listed in 20 C.F.R. 404, subpt. P,

app. 1.  As required by the fourth step of the analysis, the ALJ determined that Williams

had the residual functional capacity to perform the full range of work at the medium

exertional level, but should avoid heights and moving machinery.[2]  Based on this finding,

the ALJ determined that Williams was capable of performing her past relevant work as a

---

[1] Although Williams alleged an onset date of May 14, 2005, the period relevant to her disability determination began on September 20, 2005, her protective filing date.  See 20 C.F.R. §§ 416.305, 416.335.

[2] Under Social Security regulations, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

collection agent and a daycare worker, both of which he found she had performed at a light level.[3] Accordingly, the ALJ concluded that Williams was not disabled.

The Appeals Council denied Williams's request for review, making the ALJ's decision the Commissioner's final decision. See 20 C.F.R. § 416.1481. Williams then filed this civil action in district court pursuant to 42 U.S.C. § 405(g), and the matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge issued a report and recommendation concluding that substantial evidence supported the ALJ's determination that Williams could perform her past relevant work, to which Williams filed objections. On April 21, 2008, the district court accepted the report and recommendation, denied Williams's request for review, and entered judgment in favor of the Commissioner. Williams timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Our role in this appeal is identical to that of the district court. Specifically, we review the Commissioner's findings of fact to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

---

[3] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

4

reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). We exercise plenary review of all legal issues. Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

To receive Supplemental Security Income, a claimant must establish that she is disabled under the Social Security Act. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Here, the ALJ found that although Williams had a few severe impairments, she was not disabled. Rather, the ALJ determined that Williams retained the residual functional capacity to perform her past relevant work. After thoroughly reviewing the administrative record, we agree with the magistrate judge's reasoning and conclusion that substantial evidence supports the ALJ's conclusion. The ALJ considered all the medical evidence and Williams's testimony in determining that she was not disabled during the relevant period and thus not entitled to Supplemental Security Income.

Williams raises essentially three challenges to this conclusion. First, Williams argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence because the ALJ gave greater weight to a checklist completed by a non-examining medical consultant than a contrary checklist completed by an examining

5

medical consultant. On January 24, 2006, Williams was seen by an independent agency examiner, who indicated in a form attached to his report of her physical examination that although Williams had no limitations in her ability to lift and carry and could occasionally bend, kneel, stoop, crouch, balance, and climb, she was limited to (i) standing and walking for one to two hours per eight-hour workday and (ii) sitting less than six hours a day, in five minute intervals. The ALJ ultimately decided not to credit these work-preclusive findings based on his review of the rest of the record, including a non-examining medical consultant's March 1, 2006, report that indicated Williams could sit, stand, and walk for about six hours in an eight-hour workday with normal breaks.[4]

It is well established that a non-examining physician's opinions "have less probative force as a general matter, than they would have had if the doctor had treated or examined [the claimant]." Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (internal quotation marks and citation omitted); see also 20 C.F.R. § 416.927(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."). Yet, in this instance, the ALJ's decision not to credit the examining consultant's findings as to Williams's ability to perform work-related physical activities was both thoroughly explained and well supported by substantial evidence. Not only was there a conflict between the examining medical

---

[4] The signature of the non-examining agency expert is illegible and his or her name does not appear elsewhere on the form.

consultant's restrictive assessment and the non-examining medical consultant's findings, but the extreme limitations found by the examining consultant also conflicted with (1) objective testing in the form of x-rays and MRI images of Williams's knees and spine that showed no extreme abnormalities;[5] (2) the September 14, 2006, report by Dr. Robert W. Downie, a specialist in rehabilitation medicine who recommended that Williams attend physical therapy and continue to take ibuprofen for her low back and knee pain;[6] and (3) the examining consultant's own physical examination report, in which he indicated that (i) Williams's gait was within normal limits, although she favors her left foot; (ii) a straight-leg raising test was negative; (iii) there was no sign of gross sensory changes,

---

[5] The August 28, 2006, x-rays of Williams's knees showed that "[t]he visualized osseous structures are grossly intact without evidence of joint effusion, fracture, or joint space narrowing." (A.R. at 185.) The back x-rays showed a normal thoracic spine but some disc space narrowing in her lumbar spine. The October 5, 2006, MRI of her left knee showed early osteoarthritis with areas of full thickness cartilage loss, but with normal ligaments, a normal extensor mechanism, and no torn menisci. Her right knee was similar, except it also demonstrated "minimal" tendinosis. (A.R. at 182.) The MRI of Williams's thoracic spine was normal. The images of her lumbar spine showed multilevel "diffuse disc bulge" and "mild bilateral facet joint arthropathy," conditions which resulted in "mild" neural forminal stenosis at L3-L4 and L5-S1 and "mild to moderate left neural foraminal stenosis" at L4-L5, with "possible impingement upon the traversing left L5 nerve root." (A.R. at 179.)

[6] Dr. Downie noted that Williams's "[b]ilateral knee exam reveals some mild laxity on the right knee on the medial compartment, also some mild crepitus bilaterally, but has full range of motion and could not elicit any pain with ranging the knees." (A.R. at 195.) Dr. Downie's examination of Williams's back found "bilateral paraspinal muscle hypertrophy starting in the mid thoracic, going down to superior sacral region, also has tenderness, which is worse on the right than on the left in the L3, L4, and L5 area." (A.R. at 196.) He described her gait as essentially symmetric with normal stride length bilaterally.

7

muscle weakness, or atrophy; (iv) her joints did not disclose any signs of acute synovitis or arthritis; and (v) her range of motion was within normal limits. Based on this record, substantial evidence supports the ALJ's decision to credit the non-examining consultant's findings over the examining consultant's assessment of Williams's ability to walk, stand, and sit.

Williams's second argument is that the ALJ improperly relied on his own lay evaluation of the medical evidence. Specifically, Williams asserts that the ALJ (i) misinterpreted or ignored the findings of her October 5, 2006, MRI and (ii) summarily concluded that Williams's pain was controlled with ibuprofen. This challenge also fails to persuade. Certainly, "an ALJ may not make speculative inferences from medical reports." Plummer, 186 F.3d at 429. Nor is the ALJ "free to employ [his] own expertise against that of a physician who presents competent medical expertise." Id. Yet, there is no indication in this record that the ALJ impermissibly substituted his own assessment for that of a qualified expert, drew speculative inferences from Williams's medical records, or ignored critical evidence. With regard to the MRI of her knees, Williams asserts that although the ALJ acknowledged the scan showed some early osteoarthritis, he ignored the additional diagnosis of "full thickness cartilage loss." This criticism fails given that cartilage loss is a characteristic of osteoarthritis, rather than a separate condition.[7] Further, despite Williams's claims to the contrary, the ALJ's decision demonstrates that

---

[7] See Stedman's Medical Dictionary 1388 (28th ed. 2006) (defining osteoarthritis as "arthritis characterized by erosion of articular cartilage").

8

he considered the MRI of Williams's lumbar spine.[8]  In short, the MRI does not undermine the ALJ's ultimate determination that her knee and back impairments would not prevent her from performing her past relevant work.  Indeed, this conclusion is further supported by the fact that no doctor ever recommended more than over-the-counter medication and physical therapy for her back and knee pain.[9]

Further, substantial evidence supported the ALJ's conclusion that her knee and back "pain was not that severe" because it was controlled with ibuprofen.  (A.R. at 17.)  Although Williams argues that the ALJ ignored the fact that she had been prescribed Percocet but ceased taking it because of an allergic reaction, this assertion is irrelevant as the record reveals that she was prescribed Percocet for pelvic pain associated with an ovarian cyst, not for her knee and back pain.[10]  No records indicate Williams sought

---

[8] Although the ALJ stated that the MRI of Williams's lumbar spine revealed no foraminal stenosis at the L3-L4 level when it actually showed "left neural foraminal stenosis," this inaccuracy is minor given that the scan noted that the stenosis at that level was "mild."  (A.R. 17, 179.)

[9] Moreover, on August 18, 2006, Williams asked one of her treating physicians at Thomas Jefferson University Hospital to fill out a disability form based on her back and knee pain, but her doctor agreed to only one month of disability, a clear indication that her physician did not believe Williams's back and knee impairments rendered her disabled within the meaning of the Social Security Act.

[10] Similarly, Williams claims that the ALJ's assumption that ibuprofen controlled her pain is belied by medical records documenting her complaint that the pain was worsening over time.  Yet, the document Williams points to as evidencing her complaint of progressive pain is from a doctor's visit on August 18, 2006, which appears to be the first time that Williams reported her knee pain to her primary physicians at Thomas Jefferson University Hospital and only the second time she complained of lower back pain, with the first complaint approximately two and a half years prior.  This record thus fails to undermine the ALJ's finding that her pain was controlled with ibuprofen and was

9

stronger medication for her knee and back pain; instead, the record reflects she told a physical therapist she got some pain relief from ibuprofen. Based on this evidence, the ALJ was entitled to conclude ibuprofen was sufficient to control Williams's knee and back pain and to take this finding into account when evaluating her level of pain. There is thus no indication the ALJ improperly relied on his own lay opinions.

Distilled to its essence, Williams's third challenge to the ALJ's finding of no disability is that the ALJ relied too heavily on the non-examining medical consultant's report, which did not take Williams's back and knee impairments into account, in determining that Williams retained the functional capacity to perform the full range of medium exertional work. The non-examining consultant reviewed Williams's medical records and prepared a functional capacity assessment on March 1, 2006, before the record in this matter was complete. As a result, the expert's report was prepared without the benefit of the x-rays and MRI images, which were taken in August and October of 2006, or even treatment notes from her physicians regarding this complaint.[11] It is

thus not that severe.

[11] Williams further argues that the Commissioner failed to inform the contracted experts of her back and knee impairments, of which he had notice, in derogation of his duties under Sims v. Apfel, 530 U.S. 103 (2000). In Sims, the Supreme Court held that a claimant who had exhausted administrative remedies and sought judicial review had not waived issues that were not included in her request for review by the Appeals Council. In a section of his opinion in which he was not writing for the Court, Justice Thomas noted that "Social Security proceedings are inquisitorial rather than adversarial" and that the ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." Id. at 110-11. Although this portion of the Sims opinion was not binding and accordingly cannot be construed as affirmatively creating duties on the

certainly plausible that the non-examining consultant would have found that Williams had greater limitations had he been able to review these materials. Yet, as the magistrate judge concluded in his report and recommendation, even assuming the ALJ's finding that Williams retained the functional capacity to engage in medium work lacked substantial evidence, there clearly was substantial evidence for his ultimate conclusion that Williams could perform her past relevant work at the light exertional level.[12]

_____

Commissioner, at least two published Third Circuit decisions have quoted this language approvingly. See N.J. Media Group v. Ashcroft, 308 F.3d 198, 223 (3d Cir. 2002); Burnett v. Comm'r of Social Sec. Admin., 220 F.3d 112, 120 n.2 (3d Cir. 2000). Additionally, Social Security regulations provide that when the Commissioner retains a physician to perform a consultive examination, he will "give the examiner any necessary background information about [the claimant's] condition." 20 C.F.R. §§ 404.1517, 416.917. Yet, neither these decisions, the regulations, nor any other authority require the Commissioner to inform its contracted experts of all health problems mentioned by a claimant, as Williams would have us find. There is thus no indication that the Commissioner failed to develop the record fully in this matter. Although Williams mentioned her knee pain in a form she completed on November 28, 2005, in connection with her disability claim, her knee and back impairments were not the conditions for which she originally claimed disability. The record clearly shows that the examining consultant and the non-examining consultant were not aware of her back and knee problems because Williams did not begin seeking treatment for these conditions until after their review.

[12] The ALJ considered Williams's past relevant work to include both her position collecting fees for television service in a hospital and her work in a daycare center. Social Security regulations define past relevant work as "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1). Regulations further define substantial work activity as "work activity that involves doing significant physical or mental activities" and provide that "[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." Id. at § 416.972. It is unclear on this record whether the time Williams spent volunteering at her friend's daycare center constituted "substantial gainful activity," as is necessary for the work to qualify as "past relevant work." Yet, even assuming her work as a volunteer at a

11

III.

We have considered all of Williams's arguments on appeal and none succeed to persuade. Because substantial evidence supports the ALJ's determination that Williams could perform her past relevant work and was therefore not disabled, we will affirm the judgment of the district court.

---

daycare center did not constitute past relevant work, Williams bore the burden of showing she was unable to return to her past relevant work as a hospital collection agent, a burden she clearly failed to meet. See Plummer, 186 F.3d at 428.