HOLLOWAY, Circuit Judge,
dissenting:
Being unable to concur in the disposition of the majority opinion, I respectfully dissent. My reasons for my conclusion are stated below.
Here, Claimant Joan Wall appeals from the denial of her application for supplemental security income (SSI) benefits under Title XVI. We have jurisdiction under 42 U.S.C. § 405(g). Because the administrative law judge (ALJ) failed to provide a sufficient explanation of his weighing and balancing of the evidence to support his findings at both step three and step four, I would reverse and remand for additional proceedings.

Facts and Procedural History

I review only a few facts from the extensive record in this case. Claimant was born on February 5, 1942, making her sixty-five years old now. Aplt. Admin. App. at 41. She finished the ninth or tenth grade at school, completed a G.E.D. at the age of forty, and completed hairstyling and cosmetology school. Id. at 42^13. Her full-scale IQ was tested in November 2001 to be 67. Id. at 238. She has been married and divorced three times and lives alone in a townhouse in Colorado Springs *1071 provided by her son. Id. at 41-42, 97, 236, 241.
Claimant has had several jobs. Her past relevant work was as a telemarketer at MCI WorldCom from October 1997 to April 1998, Id. at 62, 111, 119, and as a customer service representative at Tele-quest from April 1998 to August or October 1999, Id. at 111, 119, 145, 175. She testified that she voluntarily worked eleven to twelve hours a day at MCI, including on some weekends and holidays, because she loved the job and the people. Id. at 62, 71-72. She said that she stopped working in September 1999 after she was injured in a fall at work. Id. at 43-44, 61-62. Around the same time that she was injured, Telequest closed its office in Colorado Springs. Id. at 174. Claimant protectively filed her application for SSI benefits on October 9, 2001, alleging a disability beginning on December 30, 1999, due to “pain in both knees, both legs, and her lower back, spasms, stiff neck, memory problems, sleep problems, diabetes melli-tus Type II and migraine headaches.” Id. at 20.
The lengthy administrative record contains claimant’s medical records dating back more than ten years, showing visits to or review by numerous medical professionals for both physical and mental problems. These records contain evidence of claimant’s past medical treatment that apparently resolved individual medical problems (e.g., hysterectomy and carpal tunnel release), as well as evidence of chronic or degenerative medical problems (e.g., diabetes, hypertension, knee problems, depression, and pain).
Claimant’s medical records also document her extensive attempts to resolve injuries resulting from a series of accidents. In the nineties, she was in a car accident — another vehicle rear-ended her vehicle as she sat at a stoplight. Id. at 184, 270, 667. The accident caused injuries to her back and neck, and she was treated by Kenneth P. Finn, M.D. Id. at 667-70. In August 1999, she fell in the restroom while working at Telequest. Id. at 44, 173, 187, 270. She slipped in some water on the floor, falling forward onto her knees. Id. at 44, 173, 270. When she tried to get up, she fell backward onto her back and buttocks. Id. at 173, 270. She was treated by Dr. Finn, id. at 538-40, and other doctors. An MRI revealed a posterior medial meniscal tear, id. at 538, which prompted a debate among claimant’s doctors as to whether she should have surgery on her knees. Their conclusion was that she should not, either because it would not reduce her pain or because complications were likely because of her diabetes, see, e.g., id. at 68, 252-55, 257, 259, 263, 317, 538. She went to physical therapy for several months. Id. at 173. In March 2002, claimant fell when her son and his wife took her on vacation. Id. at 57-58. She tripped on a rug at the hotel, falling and breaking her left arm in four places. Id. at 57-58, 315.
A hearing was held before an administrative law judge (ALJ) on May 20, 2003. After the hearing, the ALJ denied benefits in a written decision filed on October 21, 2003. Id. at 20-33. Noting evidence stating that claimant was not injured in her 1999 fall beyond her preexisting injuries, he concluded that she quit working, not because of the fall, but because Telequest closed its office in Colorado Springs and she was paid lost wages. Id. at 29. He determined at step one that claimant had not worked since she filed her application for SSI benefits. Id. at 21. He concluded without explanation at step two that “[t]he evidence supports a finding” that claimant had suffered injuries to her neck, back, and knees, and that she had a somatoform disorder. Id. He determined at step three that claimant did not satisfy the specific listings either for disorders of the spine, *1072 Listing 1.04, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04, or for somatoform disorder, Listing 12.07, id. § 12.07, or, generally, any other listing. Aplt. Admin. App. at 22. The ALJ concluded at step four that claimant retained the residual functional capacity (RFC) for a full range of sedentary work, “sitting a total of approximately six hours in an eight hour workday, with normal breaks, and occasional walking and/or standing.” Id. at 30. He further determined that “claimant’s mental condition would permit work of less complexity and judgment that could be learned in up to three months.” Id. at 31. Based on evidence adduced at the hearing from a vocational expert (VE), the ALJ concluded that claimant could return to her past job as a telemarketer with those limitations. Id. As a result, he determined at step four that claimant was not disabled and was not entitled to SSI benefits. Id.
In addition to the arguments on the existing record she made in her appeal to the Appeals Council, claimant presented some additional evidence, not previously submitted to the agency, that she had been diagnosed with a closed head injury with short-term memory problems by her current doctor, who did not consider her to be a malingerer. Id. at 12, 14, 15. This additional evidence was made a part of the record. Id. at 9. Nevertheless, the Appeals Council denied review, making the ALJ’s decision the agency’s final decision. Id. at 6-8. Claimant filed suit in the district court, which also denied relief. Claimant filed this appeal.

Standard of Review

“This court reviews the [agency’s] decision to determine whether the findings are supported by substantial evidence and whether the [agency] applied correct legal standards.” Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992) (quotation omitted). Substantial evidence “means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation omitted). “In order to determine whether the [agency’s] decision is supported by substantial evidence, we must meticulously examine the record. However, we may neither reweigh the evidence nor substitute our discretion for that of the [agency].” Musgrave, 966 F.2d at 1374.

Issues on Appeal

Claimant argues on appeal that the ALJ erred at steps three and four of the five-part evaluation sequence. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (discussing five-part evaluation sequence). Claimant argues that the ALJ failed to make a proper step three finding: (1) by failing to consider whether her mental impairments met or equaled one of the listings for mental retardation, Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C, or another listing; (2) by failing to develop the record with regard to her cognitive and other mental disorders in addition to somatoform disorder; and (3) by failing to consider her impairments in combination. She also argues that the ALJ erroneously found at step four that she was capable of performing her past relevant work as a telemarketer: (4) by failing to find that her treating physicians had issued restrictions on her ability to work; (5) by failing to consider restrictions on the agency’s RFC assessment; (6) by erroneously applying a “reasonable degree of certainty” standard to her capacity to perform household tasks, Aplt. Admin. App. at 28; and (7) by failing to consider her diagnosed mental impairments other than somatoform disorder. The agency argues that any errors are harmless. Based on my review, claimant’s assertions of error have merit.

*1073
Discussion

Step Three

At step three, the ALJ considers whether a claimant’s impairments meet or equal a listed impairment. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996). Claimant argues that in light of the, diagnosis by Steven Stockdale, Ph.D., that she had a cognitive disorder NOS, major depression recurrent, and anxiety disorder NOS and a full scale IQ of 67, Aplt. Admin. App. at 239, the ALJ should have considered whether she met or equaled one of the listings for mental retardation, Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C, or another listing. She claims that she meets or equals Listing 12.05C. Aplt. Opening Br. at 13.
To me, the ALJ’s decision does not reflect that he considered whether or not claimant met or equaled Listing 12.05C, which may be understandable since claimant did not argue at the hearing that she met or equaled this Listing. This does not effect a waiver in this court, see Sims v. Apfel, 530 U.S. 103, 108-12, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), but only may explain why the ALJ did not address Listing 12.05. The ALJ’s failure to consider Listing 12.05C was an error, however, because the record contains some evidence showing that claimant satisfied the requirements of Listing 12.05C to show a “valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.” 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. It is for the ALJ to make appropriate findings in the first instance. E.g., Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir.2004); Clifton, 79 F.3d at 1009-10 (citing 42 U.S.C. § 405(b)(1)). Therefore, I would remand the question of whether claimant meets or equals Listing 12.05C to the ALJ.
The agency urges us to conclude that claimant cannot meet or equal Listing 12.05C because the ALJ has already found that she did not satisfy the “B” criteria of Listing 12.07, Aplt. Admin. App. at 22, foreclosing a finding that she satisfies the “B” criteria of Listing 12.05. An examination of these two Listings, however, shows that Listing 12.05 has neither the same structure nor the same “B” criteria as Listing 12.07. Therefore, the agency’s argument is without merit.
The agency also argues that claimant has not presented any evidence to satisfy thé first sentence in Listing 12.05, called, alternatively, the “capsule definition” or the “diagnostic description.” See, e.g., 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A. The capsule definition requires claimant to show “significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.” Id. § 12.05. The agency’s argument asks us to overstep our authority, however. “[A]s a court acting within the confines of its administrative review authority, we are empowered only to ‘review the ALJ’s decision for substantial evidence’ and, accordingly, ‘we are not in a position to draw factual conclusions on behalf of the ALJ.’ ” Allen, 357 F.3d at 1144 (quoting Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir.2001)). Because the ALJ did not expressly consider Listing 12.05, I would remand for the ALJ to make appropriate findings in the first instance, which is his duty to do. 42 U.S.C. § 405(b)(1). For the remand, I note that we have previously pointed' out that the agency has never adopted a standard of measurement for the term “deficits in adaptive functioning” in the capsule definition of Listing 12.05. Barnes v. Barnhart, 116 Fed.Appx. 934, 942 (10th Cir. *1074 2004). The Commissioner publicly announced in April 2002, after claimant filed her application for SSI benefits, that the four major professional organizations dealing with mental retardation each has a somewhat different standard for measuring “deficits in adaptive functioning,” but the Commissioner expressly declined to adopt any particular one of them. 67 Fed.Reg. 20,018, 20,022 (Apr. 24, 2002). Rather, the Commissioner “allow[s] use of any of the measurement methods recognized and endorsed by the professional organizations.” 67 Fed.Reg. at 20,022. The ALJ therefore should choose a standard of measurement and notify claimant what it is.
I cannot conclude that the ALJ erred by failing to consider any other listings, since claimant does not specify any other listings which she arguably equals or meets.
Claimant also argues that the ALJ erred at step three by failing to develop the record with regard to her cognitive and other mental disorders. Because I would remand based on Clifton error, I would leave it to the ALJ to determine what further record development may be required. See, e.g., Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir.1997).
Claimant’s final step-three argument is that the ALJ erred by failing to consider her impairments in combination. It goes without saying that, on remand, claimant’s impairments must be considered singly and in combination. 42 U.S.C. § 423(d)(2)(B); Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir.1991).

Step Four

At step four, I am convinced that the ALJ should determine the claimant’s RFC, the requirements of the claimant’s past relevant work, and whether they match. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir.1996). Claimant makes a number of valid arguments at this step.
Claimant argues that the ALJ erroneously found that she was capable of performing her past relevant work as a telemarketer by failing to find that her treating physicians and the agency consulting physician issued restrictions on her ability to work. While the ALJ was not necessarily bound to make his RFC finding consistent with such restrictions, I do agree that evidence of such restrictions exists in the record, and the ALJ was required to explain why he rejected it. See Clifton, 79 F.3d at 1009-10. For example, the record contains recommendations from several professionals over a period of years that claimant should change positions during the day. E.g., Aplt. Admin. App. at 597 (Finn, 1997, claimant should change positions every forty-five to sixty minutes), 506 (Sehlen-der, 2000, recommending that claimant do sedentary work with “frequent breaks throughout the work day”), 330 (Roberson, February 2001, claimant should follow restrictions set out by Dr. Finn in 1997), 244 (Kras, December 2001, claimant may “need to fluctuate between positions” to maintain work during an eight-hour day). Claimant testified that she can sit for an hour or two on a Lazy Boy, id. at 54, but that some days are better than others and she sometimes “can’t even sit maybe more than, what, 30 or 40 minutes without taking, you know, the medication,” id. at 55, and that with medication she can sit for at least an hour before taking a fifteen-minute break to walk around and get her circulation going, id.
The ALJ did not explain why he rejected the evidence that claimant should take frequent breaks from sitting. This omission was error, because “in addition to discussing the evidence supporting his decision, the ALJ also must discuss the un-controverted evidence he chooses not to rely upon, as well as significantly probative *1075 evidence he rejects.” Clifton, 79 F.3d at 1009-10. The VE’s response to claimant’s attorney’s question including a restriction on sitting cannot overcome this failing because the ALJ made no finding, specific or otherwise, that claimant needed to change positions frequently. The ALJ found that she could work “with normal breaks,” Aplt. Admin. App. at 30, defined by the VE to be a fifteen-minute break in the morning and afternoon and a thirty-minute break for lunch. Id. at 77. Several professionals recommended that claimant change positions more frequently than that, and claimant testified that she needed to tvalk around for fifteen minutes after sitting for an hour, to get her circulation going. Id. at 55. The VE testified that the telemarketer job would allow an employee “to take a postural shift, but if that individual has to move away from whatever they’re doing in the productivity area, then no, they would not be able to do it.” Id. at 77. I cannot conclude that it was harmless error for the ALJ to fail to explain why he rejected the evidence that claimant should not do prolonged sitting, and I would remand this issue to the ALJ.
Claimant also argues that the ALJ erred by discounting her testimony that her daily activities are fairly limited because they could not “be objectively verified with any reasonable degree of certainty.” Id. at 28. This argument has merit. I am unaware of — and the agency has not identified — any statute, regulation, ruling, or case law directing an ALJ to “objectively verify” by a “reasonable degree of certainty” whether a claimant’s daily activities are as limited are as he or she asserts. The standard for an adverse credibility determination is not whether the claimant’s testimony can be objectively verified. Rather, an adverse credibility determination must be (1) “closely and affirmatively linked” to the evidence, and (2) based on evidence that is “substantial.” Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted).
Claimant also argues that the ALJ erred by failing to consider her diagnosed mental impairments other than somatoform disorder. I agree. “In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual’s impairments, even those that are not ‘severe.’ ” S.S.R. 96-8p, 1996 WL 374184, at *4. The record includes numerous references to diagnoses touching on claimant’s mental state, including depression, see, e.g., Aplt. Admin. App. at 177, 184, 239, 246-54, 256-57, 260-64, 271, 550, 645; anxiety, see, e.g., id. at 239, 253, 264-65, 539, 577, 579; panic attacks, see, e.g., id. at 246-48; pain disorder, see, e.g., id. at 182, 194, 239, 244, 246-69; cognitive disorder, see, e.g., id. at 239; fear, see, e.g., id. at 246-48, 250, 253, 264-65; and closed head injury with short-term memory problems, Id. at 12. The ALJ should have explained why he accepted the diagnosis of somato-form disorder but rejected the diagnoses of other mental impairments, such as these. See Clifton, 79 F.3d at 1009-10. On this point, I note the ALJ’s emphasis on a March 28, 2000 comment by James H. Evans, Ph.D. that claimant’s depression was not “debilitating,” but that she was “very, very difficult to motivate to do much of anything at this point,” was “too comfortable living off lost wages and not being motivated to return to work.” Aplt. Admin. App. at 29-30. Although Dr. Evans did make that comment, Id. at 260, he also stated in the same note that claimant suffered “intractable pain [and] reactive depression” Id., and in a number of subsequent notes continuing through his last note on August 15, 2000, that claimant suffered “intractable pain, fear, anxiety and mild to moderate depression,” id. at 246; see also id. at 247-57, 259. In other notes from his office, he or his staff stated that claimant was following through on his *1076 instructions or her own plans to become more active. Id. at 248, 261, 266, 275, 282, 284-89. In addition to these inconsistencies, Dr. Evans’ comment that claimant was hard to motivate is inconsistent with evidence from June 2001 from E.J. Aus-man, D.O. Id. at 205, 208. Dr. Ausman wrote in May 2001 that claimant’s diabetes was in extremely poor control because of her noncompliance and that he told her that she needed to “get absolutely serious” about her diabetes. Id. at 208. He recorded one month later that claimant “has actually been taking her medication,” had lost weight, was exercising and trying to stay active, was asking questions about the diet she was supposed to be following, and that her blood pressure was better. Id. at 205.
I also see no information in the record as to how long claimant received lost wages from Telequest’s closing; I doubt that any benefits from that layoff would continue indefinitely. Claimant testified at the hearing that she received assistance from the State of Colorado, but she would rather work if she could. Id. at 72. And Dr. Evans noted her concern that she was struggling financially, Id. at 262, and her desire to “get back to work to generate her normal income,” Id. at 271. These are examples of inconsistencies in the record that the ALJ should resolve through weighing and balancing of the evidence, not merely stating conclusions.
Accordingly, I respectfully dissent. I would reverse and remand this proceeding to the district court with directions to remand to the agency for additional proceedings consistent with my views on disposition.