Louis E. **ALBRECHT**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of Social Security, Defendant.

Civil Action No. 2010–10469–RBC.[1]

United States District Court, D. Massachusetts.

June 16, 2011.

---

1. On October 19, 2010, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the

Sandra L. Smales, Jamaica Plain, MA, for Plaintiff, Louis E. Albrecht.

Rayford A. Farquhar, United States Attorney's Office, for Defendant, Commissioner Michael J. Astrue.

Thomas D. Ramsey, Office of the General Counsel, Social Security Administration, Boston, MA, for Interested Party, Social Security Administration.

entry of judgment, pursuant to 28 U.S.C. § 626(c).

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (# 14) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (# 18)**

COLLINGS, United States Magistrate Judge.

### I.  Introduction

On March 18, 2010, plaintiff Louis E. Albrecht ("Albrecht") filed a complaint (# 1) pursuant to 42 U.S.C. § 405(g) against defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), appealing the denial of his claim for Social Security Disability Income ("SSDI") benefits.  In June of 2010, the Commissioner filed an answer to the complaint (# 10) as well as the administrative record. (# 16) The parties have filed cross-motions to resolve the plaintiff's claim, respectively seeking an order to reverse the Commissioner's decision (# 14) and an order to affirm the Commissioner's decision. (# 18) The motions have been fully briefed (## 15, 19) and stand ready for decision.

### II.  Procedural Background

On April 4, 2008, Albrecht filed for Social Security disability insurance benefits consequent to injuries he received to his left elbow and neck when he fell at work in November, 2006, as well as diabetes and high blood pressure.  (TR [2] at 95, 112) His application was denied both initially (TR at 46–48) and on reconsideration (TR at 52–54).  Albrecht requested a hearing before an administrative law judge ("ALJ").  (TR at 55) That hearing was held on August 31, 2009, with the plaintiff, his attorney and a vocational expert in attendance.  (TR at 19–43)

**2.** The abbreviation "TR" refers to the administrative record (# 16).

On October 6, 2009, the ALJ issued a decision wherein he found as follows: Albrecht met the insured status requirements through December 31, 2001; Albrecht has not engaged in substantial employment since November 14, 2006; Albrecht has the following severe impairments—ulnar neuropathy in the left elbow, diabetes mellitus, and degenerative disc disease of the cervical spine; Albrecht does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; Albrecht has the residual functional capacity to perform light work with certain limitations; Albrecht is unable to perform any past relevant work; there are jobs that exist in significant numbers in the national economy that Albrecht can perform; and Albrecht has not been under a disability from November 14, 2006 through the date of the decision. (TR 7–18) With the Decision Review Board having failed to complete its review within ninety days of the ALJ's decision, that decision became the final decision of the Commissioner. (TR at 1–3) Albrecht has filed the instant lawsuit to appeal that final decision.

### III. Discussion

The plaintiff challenges the Commissioner's decision on two grounds. First, Albrecht contends that the ALJ improperly rejected his claimed disabling pain and functional limitations. The ALJ found that the plaintiff "has had chronic complaints of pain that are not entirely consistent with the objective findings." (TR at 13) In other words, the ALJ did not doubt that the plaintiff suffered pain, rather, the ALJ did not fully credit Albrecht's testimony about the extent of his pain. Second, the ALJ is said to have improperly rejected the functional assessment of the plaintiff's treating physician, Dr. Friedman. These two challenges to the Commissioner's final decision are interrelated and so shall be discussed in tandem.

The plaintiff's primary care physician, Dr. Neal Friedman, completed a form entitled Emergency Aid to the Elderly, Disabled and Children Medical Report on or about April 30, 2009, in support of Albrecht's application for disability assistance from the state. (TR at 324–331) On that form Dr. Friedman reported, inter alia, that Albrecht was "unable to stand for more than 8 minutes without legs giving way [and] unable to walk more than 50 ft. before legs weaken and collapse." (TR at 329) Further, Dr. Friedman described the plaintiff's ability to stoop or bend as being "limited because of weakness in both legs." (TR at 329) Albrecht's attorney advised the ALJ that he had sent Dr. Friedman an RFC (residual functional capacity assessment) form to complete, but that the doctor had yet to return it. (TR at 27)

During the hearing, the ALJ questioned the fact that no other doctor had described Albrecht as having leg weakness. (TR at 28) Albrecht's attorney explained that since 2008, all of his treatment had been with Dr. Friedman and that Dr. Friedman had been seeing Albrecht for the year and a half prior to the hearing at no charge. (TR at 28–29; TR at 34) Albrecht testified that he had been seeing Dr. Friedman "every three months" for three years. (TR at 29; TR at 34) The ALJ inquired about Dr. Friedman's treatment records since they were not in the administrative record, and Albrecht's attorney responded that he did not have them, but had requested them. (TR at 29) At the conclusion of the hearing, the ALJ gave plaintiff's counsel ten days within which to file the records he had requested "so we can fill in the blanks." (TR at 42) No records nor an RFC form from Dr. Friedman were ever filed.

The ALJ found that the plaintiff's testimony regarding his symptoms as well as the frequency, severity and duration of pain and numbness related to those symptoms was not credible to the degree alleged. (TR at 14) In part [3], the ALJ based this conclusion on the fact that "the record indicates that the claimant last received treatment in April 2008 and did not receive treatment again until April of 2009 when he needed a disability form completed." (TR at 14) The ALJ reasoned that if Albrecht was suffering to the extent that he claimed, he would not have gone a year without treatment. (TR at 14–15)

In light of the plaintiff's testimony that he had been seeing Dr. Friedman every three months for the prior three years as well as his attorney's comments during the administrative hearing that Dr. Friedman had been treating his client gratis for the previous year and a half, there clearly is a gap in the medical records evidence regarding Albrecht's treatment with Dr. Friedman. The ALJ relied on that evidentiary gap both to question the plaintiff's credibility and to reject the May 2009 opinion of Dr. Friedman as unsupported. The ALJ found that "prior to seeking the completion of [the May 2009 opinion form] the claimant last received treatment from Dr. Friedman in 2007. Since that date there has been no physical or mental status examinations performed by Dr. Friedman." (TR at 16) There is an unacknowledged and unresolved conflict between the information that was related during the administrative hearing by Albrecht and his lawyer and the findings made by the ALJ on the administrative record before him.

The First Circuit has explained that:

> Because of the nonadversarial nature of Social Security disability determinations, the Commissioner is not a litigant and has no representative at the agency level. Indeed, the model is investigatory, or inquisitorial, rather than adversarial. *Sims v. Apfel,* 530 U.S. 103, 110, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits. *Id.*

*Seavey v. Barnhart,* 276 F.3d 1, 8 (1 Cir., 2001).

It is true that the plaintiff in this case was represented by counsel during the administrative proceedings. The First Circuit has held that,

> When a claimant is represented, the ALJ, 'should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.' *See Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997). *See also Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988) ('an ALJ is entitled to presume that claimant represented by counsel in the administrative hearings has made his best case'). We will not fault the ALJ for failing to

---

**3.** The ALJ also found Albrecht's credibility to be compromised because "he frequently reported pain running from his elbow up to his neck or he reported no neck pain at all ..., but once he was advised of the findings of the MRI on his neck, he then reported pain running from his neck down his arm...." (TR at 15) The plaintiff argues that the record in fact reflects that he complained about neck pain from the date he was injured (TR at 161), in his initial disability report (TR at 112), in

August, 2007 at a doctor's office consultation (TR at 260), in October, 2007 when an x-ray was taken (TR at 296), and in March, 2008 when he underwent an MRI (TR at 293).

The neck pain issue was just one of many factors considered by the ALJ when assessing Albrecht's credibility. Any error with regard to the neck pain issue alone would be an insufficient basis upon which to reverse the ALJ's decision.

secure Dr. Jimenez's treatment notes or ask further questions, particularly where claimant has not shown how he was prejudiced by the ALJ's alleged shortcomings. *See, e.g., Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir.1997) (" 'Mere conjecture or speculation that additional evidence may be obtained ... is insufficient to warrant a remand.' " (citation omitted)); *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir.1995) ('Reversal due to [an ALJ's alleged] failure to develop the record is only warranted where such failure is unfair or prejudicial.').

*Faria v. Commissioner of Social Sec.,* 187 F.3d 621 (Table), 1998 WL 1085810, *1 (1 Cir., Oct. 2, 1998) (per curiam) (footnote omitted).

In the present case, Albrecht has unquestionably been prejudiced by the absence of his treating physician's records for the period prior to his April 2009 opinion. The lack of medical records was a strike against the plaintiff's credibility vis-a-vis his claimed pain. This dearth of medical records was a substantial reason why the ALJ "afforded no evidentiary weight" (TR at 16) to the opinion of the treating physician, Dr. Friedman.

In light of the prejudice to the plaintiff, this is an instance

where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness. *See Landess* [*v. Weinberger*], 490 F.2d [1187,] 1189 [ (8 Cir., 1974) ].

*Currier v. Secretary of Health, Ed. and Welfare,* 612 F.2d 594, 598 (1 Cir., 1980);

*Deblois v. Secretary of Health and Human Services,* 686 F.2d 76, 80-1 (1 Cir., 1982).

Indeed, the applicable regulations underscore an ALJ's obligation in cases such as this:

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. 404.1512; *see also* SSR 96-5p ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact

the source for clarification of the reasons for the opinion.").

Thus, to summarize, in light of the particular factual circumstances of this case and the prejudice that has inured to the plaintiff consequent to the gap in the medical treatment evidence, this case must be remanded in order to afford the ALJ the opportunity to recontact Albrecht's treating physician, Dr. Friedman, and request further or more complete medical records if such records exist.

### IV. Conclusion and Order

For all the reasons stated, it is OR-DERED that Plaintiff's Motion to Reverse the Decision of the Commissioner (# 14) be, and the same hereby is, ALLOWED to the extent that final judgment shall enter REMANDING this case to the Commissioner for further proceedings in accordance with this opinion. It is FURTHER ORDERED that Defendant's Motion for Order Affirming the Decision of the Commissioner (# 18) be, and the same hereby is, DENIED.